**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

--------------------------------------------------------

GENESEE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, on behalf of itself
and all others similarly situated,

      Plaintiffs,

     v.

DRIVEN BRANDS HOLDINGS INC.,
JONATHAN G. FITZPATRICK, and
TIFFANY L. MASON

      Defendants.

--------------------------------------------------------

**NO. 23-cv-00895-MOC-DCK**

<u>**CLASS ACTION**</u>

## DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**ROBINSON, BRADSHAW& HINSON, PA**
Adam K. Doerr
Emma W. Perry
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246
Tel.: (704) 377-8114
adoerr@robinsonbradshaw.com
eperry@robinsonbradshaw.com

*Local Counsel for Defendants Driven Brands*
*Holdings Inc. and Jonathan G. Fitzpatrick*

**WINIKER LAW FIRM, PLLC**
S. Frederick Winiker, III, Esq.
Winiker Law Firm, PLLC
352 N Caswell Rd.
Charlotte, NC 28204
Tel.: (704) 333-8440
swiniker@winikerlaw.com

*Local Counsel for Defendant Tiffany L. Mason*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher D. Belelieu (*pro hac vice*)
Nathan C. Strauss (*pro hac vice*)
Bethany Saul (*pro hac vice*)
200 Park Ave.
New York, NY 10166
Tel.: (212) 351-4000
cbelelieu@gibsondunn.com
nstrauss@gibsondunn.com
bsaul@gibsondunn.com

*Counsel for Defendants Driven Brands*
*Holdings Inc. and Jonathan G. Fitzpatrick*

**ROTTENBERG LIPMAN RICH, P.C.**
Steven Kayman (*pro hac vice*)
Jennifer A. Kreder (*pro hac vice*)
230 Park Ave., 18th Floor
New York, NY 10169
Tel.: (212) 661-3080
skayman@rlrpclaw.com
jkreder@rlrpclaw.com

*Counsel for Defendant Tiffany L. Mason*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ...................................................................................................................... 2

A. PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION OR OMISSION ....................................................... 2

1. Plaintiffs Fail to Plead Materially False and Misleading Statements about Driven's Auto Glass Repair Business .............................................. 2

2. Plaintiffs Fail to Plead Materially False and Misleading Statements about USCW ...................................................................................... 10

B. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED SCIENTER .......... 15

1. Plaintiffs' Allegations That Defendants Were Personally Informed About Alleged Challenges in the Auto Glass Repair & USCW Businesses Are Insufficient to Support a Strong Inference of Scienter.... 15

2. Even if Plaintiffs Had Sufficiently Alleged Actual Knowledge of Falsity, Allegations of Actual Knowledge of Falsity Alone are Insufficient to Plead Scienter. ................................................................. 20

3. Plaintiffs' Allegations That Defendants Should Have Known About Alleged Challenges in the Auto Glass Repair & USCW Businesses Are Insufficient to Support a Strong Inference of Scienter ............................ 21

4. Plaintiffs' Additional Allegations Against Mason Are Insufficient to Support a Finding of Scienter Against Mason or the Company ............... 23

C. PLAINTIFFS FAIL TO STATE A 20(a) CLAIM .......................................... 25

CONCLUSION ................................................................................................................. 25

i

**Cases**

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...................................................................................................6

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) .......................................................................5

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
827 F. Supp. 2d 559 (D.S.C. 2011).........................................................................15

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
2012 WL 1067651 (D. Md. Mar. 28, 2012)..............................................................13

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) ....................................................................................9

*In re Dentsply Sirona, Inc. Sec. Litig.*,
665 F. Supp. 3d 255 (E.D.N.Y. 2023) .......................................................................7

*In re DXC Tech. Co. Sec. Litig.*,
2020 WL 3456129 (E.D. Va. June 2, 2020), *aff'd sub nom. KBC Asset Mgmt.
NV v. DXC Tech. Co.*, 19 F.4th 601 (4th Cir. 2021) .......................................11, 13, 14

*Elec. Workers Pension Tr. Fund of IBEW Loc. Union No. 58 v. CommScope, Inc.*,
2013 WL 4014978 (W.D.N.C. Aug. 6, 2013)........................................................5, 14

*Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v.
MacroGenics, Inc.*,
61 F.4th 369 (4th Cir. 2023) ................................................................9, 10, 13, 14

*In re Fed Ex Corp. Sec. Litig.*,
517 F. Supp. 3d 216 (S.D.N.Y. 2021).........................................................................9

*In re First Union Corp. Sec. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001) ....................................................................6, 8

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)...................................................................................6, 7

*In re Genworth Fin. Inc. Sec. Litig.*,
103 F. Supp. 3d 759 (E.D. Va. 2015) .................................................................21, 23

*Graff v. Prime Retail, Inc.*,
172 F. Supp. 2d 721 (D. Md. 2001), *aff'd sub nom. Marsh Grp. v. Prime
Retail, Inc.*, 46 F. App'x 140 (4th Cir. 2002).............................................................3

*Greenhouse v. MCG Cap. Corp.*,
392 F.3d 650 (4th Cir. 2004) ...............................................................................6, 7, 8

Case 3:23-cv-00895-MOC-DCK     Document 43     Filed 01/27/25     Page 3 of 33

*Hedick v. Kraft Heinz*,
    2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...........................................................................12

*Hillson Partners Limited Partnership v. Adage, Inc.*,
    42 F.3d 204 (4th Cir. 1994) ...........................................................................................................6

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,
    706 F. Supp. 3d 1225 (D. Kan. 2023) ........................................................................................19

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
    19 F.4th 601 (4th Cir. 2021) .......................................................................................... *passim*

*Keeney v. Larkin*,
    306 F. Supp. 2d 522 (D. Md. 2003), *aff'd*, 102 F. App'x 787 (4th Cir. 2004) ................ *passim*

*Kiken v. Lumber Liquidators Holdings, Inc.*,
    155 F. Supp. 3d 593 (E.D. Va. 2015) ......................................................................................6, 21

*Lerner v. Nw. Biotherapeutics*,
    273 F. Supp. 3d 573 (D. Md. 2017) ............................................................................................12

*Longman v. Food Lion, Inc.*,
    197 F.3d 675 (4th Cir. 1999) ......................................................................................................13

*Maguire Fin., LP v. PowerSecure Int'l Inc.*,
    876 F.3d 541 (4th Cir. 2017) .........................................................................................16, 17, 21

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    543 F. Supp. 3d 96 (D. Md. 2021), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31
    F.4th 898 (4th Cir. 2022) ..............................................................................................................4

*Matrix Cap. Mgmt. Fund v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ......................................................................................................15

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................................................5

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
    876 F. Supp. 2d 616 (D. Md. 2012), *aff'd sub nom. Yates*, 744 F.3d 874 ...............................18

*No. 84 Emp. Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ........................................................................................................7

*Ollila v. Babcock & Wilson Enterprises, Inc.*,
    2018 WL 792069 (W.D.N.C. Feb. 8, 2018) .........................................................3, 5, 16, 17

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ......................................................................................................13

*Raab v. General Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ...........................................................................................................13

*Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*,
    564 F. Supp. 3d 1272 (N.D. Ga. 2021) .......................................................................................12

*Ret. Sys. v. Hospira, Inc.*,
 2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ...............................................................12

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)......................................................................................15

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
 2024 WL 1898512 (S.D.N.Y. May 1, 2024) ..............................................................24

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
 75 F.4th 232 (4th Cir. 2023) ..............................................................2, 15, 23, 24

*In re SCANA Corp. Sec. Litig.*,
 2019 WL 1427443 (D.S.C. Mar. 29, 2019) .................................................................5

*SEC v. Merch. Cap., LLC*,
 483 F.3d 747 (11th Cir. 2007) ...................................................................................15

*Silver v. H & R Block*,
 Inc., 105 F.3d 394 (8th Cir. 1997) ..............................................................................7

*Singer v. Reali*,
 883 F.3d 425 (4th Cir. 2018) .......................................................................................6

*Sinnathurai v. Novavax, Inc.*,
 645 F. Supp. 3d 495 (D. Md. 2022)......................................................................21, 23

*In re St. Jude Med., Inc. Sec. Litig.*,
 836 F. Supp. 2d 878 (D. Minn. 2011).........................................................................7

*Suarez v. Advance Auto Parts, Inc.*,
 No. 5:23-CV-563-D (E.D.N.C. Jan. 23, 2025) ....................................................15, 24

*Teachers' Ret. Sys. of La. v. Hunter*,
 477 F.3d 162 (4th Cir. 2007) .....................................................................................25

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007)..............................................................................................9, 21

*In re Tibco Software, Inc.*,
 2006 WL 1469654 (N.D. Cal. May 25, 2006) .............................................................9

*In re Trex Co., Inc. Sec. Litig.*,
 454 F. Supp. 2d 560 (W.D. Va. 2006) .......................................................................18

*In re Triangle Cap. Corp. Sec. Litig.*,
 2019 WL 1083777 (E.D.N.C. Mar. 7, 2019)..............................................................15

*In re Triangle Cap. Corp. Sec. Litig.*,
 988 F.3d 743 (4th Cir. 2021) .......................................................................................4

*Turocy v. El Pollo Loco Holdings, Inc.*,
 2017 WL 3328543 (C.D. Cal. Aug. 4, 2017)..............................................................12

Case 3:23-cv-00895-MOC-DCK   Document 43   Filed 01/27/25   Page 5 of 33

*In re Under Armour Sec. Litig.*,
    342 F. Supp. 3d 658 (D. Md. 2018) ........................................................................................12

*In re UTStarcom, Inc. Sec. Litig*,
    617 F.Supp.2d (N.D. Cal. 2009) ..............................................................................................24

*In re Willis Towers Watson plc Proxy Litig.*,
    937 F.3d 297 (4th Cir. 2019) ....................................................................................................25

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ..............................................................................2, 21, 22, 25

*Zucco Partners v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................................................23

## Statutes

15 U.S.C. § 78u–5(c) ......................................................................................................................3, 8

15 U.S.C. § 78u-4(b)(2) ....................................................................................................................21

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs' Opposition is more of the same. The Opposition doubles down on the same false narrative that Driven Brands Holdings Inc. ("Driven" or the "Company") acquired businesses in the auto glass repair and car wash sectors, that those businesses performed poorly, and that the Company misled investors with respect to the integration and performance of those businesses. Yet despite making these baseless and conclusory allegations, Plaintiffs have not, and cannot, plead an actionable misrepresentation with respect to either business, nor have they pleaded any facts suggesting that Defendants acted with the requisite scienter. Simply put, the fact that a company's business may not have performed as hoped does not amount to securities fraud.

*First*, the Opposition does not cure Plaintiffs' failure to allege a single material misrepresentation or omission. The Opposition fails to point to any particularized facts demonstrating that the challenged statements were false *at the time they were made*. This alone is fatal to Plaintiffs' claims. In addition, the Opposition confuses the requisite materiality analysis by pointing to statements by analysts about the importance of the auto glass repair and U.S. car wash ("USCW") businesses to the Company's overall performance. But those statements and assumptions do not meet the materiality standard. Plaintiffs need to show that the alleged misstatements "significantly altered" the "total mix" of information available to shareholders. *Keeney v. Larkin*, 306 F. Supp. 2d 522, 531 (D. Md. 2003), *aff'd*, 102 F. App'x 787 (4th Cir. 2004) (internal quotation marks omitted). They have failed to do so. Finally, the Opposition does not dispute that a number of alleged misstatements were nothing more than immaterial puffery, just as it fails to dispute that certain alleged misstatements were "forward-looking," and therefore protected by the safe harbor. For these reasons, Plaintiffs' claims should be dismissed.

*Second*, the Opposition fails to adequately grapple with the fact that the Complaint does not make the requisite showing for scienter. Plaintiffs need to plead more than just conclusory

allegations of intent to defraud. *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014).

Plaintiffs allege in their Opposition that Jonathan Fitzpatrick and Tiffany Mason (the "Individual Defendants," and collectively with Driven, "Defendants") were "personally informed" of adverse facts related to the auto glass repair and USCW businesses that were withheld from investors, without sufficiently particularized facts to suggest that those allegations were true. Plaintiffs further fail to allege any facts to suggest corporate scienter as it relates to any of the alleged misstatements. And even if Plaintiffs had adequately pleaded that Defendants possessed knowledge of certain problems, not only are their pleadings insufficiently particularized, knowing this information is not enough to demonstrate that Defendants possessed the requisite scienter. Plaintiffs have to show that Defendants knew or were "reckless to a risk" that "declining to share that information would render their . . . predictions *misleading*." *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 243 (4th Cir. 2023) (emphasis in original). They have failed to do so.

For the reasons set forth herein and in Defendants' opening brief, the Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

### A. PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION OR OMISSION

#### 1. Plaintiffs Fail to Plead Materially False and Misleading Statements about Driven's Auto Glass Repair Business

The Opposition largely reiterates the Complaint's allegations that Defendants informed investors that (1) Driven had made progress "building out [its AGN] platform from zero," AC ¶ 145, (2) it was effectively integrating "bolt-on" acquisitions, *id.* ¶¶ 32, 44–45, and (3) was otherwise making "significant progress" with the glass business, *id.* ¶¶ 139–40, 143–44; 149–50, when in fact, "Driven never integrated its AGN platform during the Class Period." Opp. at 15.

2

But these allegations are insufficient to plead a materially false misstatement.

First, the Opposition fails to address the most fundamental pleading defect in the Complaint: there are no particularized factual allegations to suggest that the challenged statements were in fact false, nor have Plaintiffs alleged the statements were false *at the time they were made*. Second, Plaintiffs do not explain why statements describing the business's progress were anything more than immaterial puffery. Third, the Opposition incorrectly applies the standard for materiality by focusing on the importance of the auto glass repair business to Driven, Opp. at 6–8, 13–14, 17–19, when the relevant question is whether the alleged misstatement would have "significantly altered the total mix of information made available" to investors regarding the auto glass repair business. *Keeney*, 306 F. Supp. 2d at 531 (internal quotation marks omitted). Fourth, Plaintiffs' claims also fail with respect to certain alleged misstatements regarding the auto glass repair business because they were forward-looking and thus protected by the PSLRA "safe harbor." 15 U.S.C. § 78u–5(c); *see* AC ¶¶ 139, 141, 149; App'x C.

### a. Plaintiffs fail to allege any facts showing that alleged misstatements about the auto glass repair business were in fact false.

Not only must Plaintiffs allege facts showing the alleged misstatements are in fact false, as Plaintiffs' own cited cases make clear, alleged misstatements must be false when made. *Ollila v. Babcock & Wilson Enterprises, Inc.*, 2018 WL 792069, at *4–5 (W.D.N.C. Feb. 8, 2018) (courts reject "Monday morning quarterbacking."). And falsity must be pleaded with "particularity." *See, e.g.*, *id.* at *3. Plaintiffs plead no actual "admissions," and "Plaintiffs' disagreement with Defendant[s'] optimism is not tantamount to proving [their] comment[s] w[ere] false when made." *Graff v. Prime Retail, Inc.*, 172 F. Supp. 2d 721, 727 (D. Md. 2001), *aff'd sub nom. Marsh Grp. v. Prime Retail, Inc.*, 46 F. App'x 140 (4th Cir. 2002). Similarly, "corroborating reports" on Driven's lack of "progress," Opp. at 16–18, are legally insufficient to plead falsity without information on

3

the content of the reports demonstrating that the alleged misstatements were indeed false. For example, this Circuit has found that when a plaintiff cited a "Marriott Cybersecurity Report" and the specific dates the report was presented to the defendant's board, that alone was insufficient to state a claim. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 146–47 (D. Md. 2021), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022). In that case, while the reports showed that the defendants were "aware" of cybersecurity risks, plaintiffs failed to show that the reports' content directly contradicted any alleged misstatement. *Id.* Plaintiffs' allegations here are even less specific as to the content of the reports, and similarly disconnected from the alleged misstatements, further highlighting their failure to plead falsity.

In their Opposition, Plaintiffs instead rely on what they call Defendants' "own admissions" that the Company was "'several quarters behind' in integration,"—without alleging any facts to suggest this is in fact true—as support that statements about the auto glass repair business were false when made. Opp. at 17. Specifically, Plaintiffs cite to an August 2, 2023, shareholder call— *i.e.*, the purported corrective disclosure. But Plaintiffs cannot cite subsequent developments, including alleged corrective disclosures, to prove a statement *was false when made* at an earlier point in time. AC ¶¶ 15, 84. That is fraud by hindsight and "precisely what Congress intended for the PSLRA to eliminate." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 753 (4th Cir. 2021). Indeed, nothing about the *post hoc* statements on which Plaintiffs rely suggests that Defendants knew integration efforts would fall behind when they made these statements. Again, simply because a business does not do as well as expected is not a basis for a securities fraud claim.

Furthermore, Plaintiffs fail to point to any "particularized" allegations of falsity and instead rely on broad statements from confidential witnesses about reports to senior management. But Plaintiffs' characterization of these allegations as "mutually corroborating reports from high-level

former Driven executives" is simply untrue. Opp. at 17. For example, the Opposition cites FE-1's belief that there would be a "delay" with AGN's POS system and that "senior Driven executive[s]" received "mutually corroborating reports" on the integration "progress." Opp. at 9–10, 17, 21 (citing AC ¶¶57–64). Yet nowhere do Plaintiffs allege (1) the content of these "weekly reports," or (2) who received these reports. The Opposition also relies on FE-2—a "district manager"—who stated that he saw problems with Driven's POS system after acquisition but nothing more, *id.* at 9–10, 16 (citing AC ¶¶ 59, 64), and FE-3, who allegedly had knowledge about AGN's POS integration, *id.* at 9–10, 16, 25 (citing AC ¶¶ 60, 64), but only worked at Driven "from June to September 2023"—the last two months of the Class Period—and only spoke about "outlets in his territory." AC ¶ 60. These allegations do not show that Defendants' statements about integration "progress" were false or misleading. *See* AC ¶¶ 139, 141, 143, 145, 147, 149.

Despite Plaintiffs' best efforts to argue otherwise, representations of "progress" are not promises to deliver on a specific timeline.[1] It is well established that "the recitation of a mere fact . . . is not false and, taken independently, cannot be misleading." Br. at 15 (quoting *Elec. Workers Pension Tr. Fund of IBEW Loc. Union No. 58 v. CommScope, Inc.*, 2013 WL 4014978, at *15

---

[1] The cases to which Plaintiffs cite only further highlight Plaintiffs' failure to allege specific contradictory facts that were known to Defendants at the time. *See In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 757–58 (S.D. Tex. 2012) (disregarding "[g]eneral statements about corporate 'progress' [as] too squishy, too untethered to anything measurable," and relying only on reports with specific "metrics" to track progress related to process safety); *Ollila*, 2018 WL 792069, at *5 ("[D]efendants called problems at [one] project site an isolated issue, even though they were already aware that four other sites suffered from similar piping issues."); *In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443, at *7 (D.S.C. Mar. 29, 2019) (defendants specifically claimed that "[disclosures] for Unit 2 and Unit 3 reflected the actual completion dates, such that SCANA would qualify for Energy Policy Act tax credits" when internal experts and overlapping internal investigations actually delivered to Defendants said the completion dates were wrong and they would not qualify); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 961–62 (N.D. Cal. 2014) (defendants specifically represented that a Form 483 found "no outstanding [manufacturing] issue at all" and "only addressed the QC lab" when, in fact, the Form 483 showed numerous "issues with the manufacturing process").

(W.D.N.C. Aug. 6, 2013)).  The fact that Driven's efforts to integrate its auto glass repair business incurred delays does not render earlier statements about the progress of integration efforts false. *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 892 (W.D.N.C. 2001) (quoting *Hillson Partners Limited Partnership v. Adage, Inc.*, 42 F.3d 204, 213 (4th Cir. 1994)) ("'A reasonable investor knows that a capital improvement project may run into unforeseen problems and delays' and therefore no disclosure of such problems is required.").

### b.     Plaintiffs fail to demonstrate that alleged misstatements concerning auto glass repair business are not immaterial "puffery."

Plaintiffs claim that certain alleged misrepresentations cannot be puffery because there was "analyst commentary citing and crediting those very misstatements."[2]  Opp. at 18–19.  They are wrong.  As an initial matter, Plaintiffs have not alleged that analysts were responding to any alleged misstatement.  Rather, the commentary to which Plaintiffs refer alludes to general trends in Driven's auto glass repair business.  But even if the analysts were responding to specific statements—and they were not—that is not the legal standard.  As Defendants' opening brief cases make clear "materiality" is an "*objective*" standard where the Court must ask whether a "disclosure . . . would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Keeney*, 306 F. Supp. 2d at 529–31 (emphasis added).  The

---

[2] Plaintiffs assert that the materiality of an alleged misstatement to investors is a question for the jury.  Opp. at 15, 18 (citing *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 601 (E.D. Va. 2015) and *Singer v. Reali*, 883 F.3d 425, 440 (4th Cir. 2018)).  Not so.  "No shortage of cases . . . make clear that materiality may be resolved by a court as a matter of law" and the Fourth Circuit has frequently corrected "[Plaintiffs] argu[ing] that . . . only a jury could make the assessment necessary and that the district court erred by dismissing the claim at an early stage of litigation." *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 657 (4th Cir. 2004).  Despite Plaintiffs' suggestion otherwise, *Singer* does not hold that courts are barred from dismissing a complaint for failure to plead materiality.  883 F.3d at 440.  In fact, *Singer* and the case on which it relies, *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000), make clear that "[a]t the pleading stage" plaintiffs must allege "a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available." 228 F.3d 154 at 161–62 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).

6

*subjective* interest of analysts does not establish the materiality of a fact "in hindsight or otherwise." *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004). It is well established that "[the Exchange Act] do[es] *not* prohibit *any* misrepresentation . . . of *im* material [sic] facts, even if it induces reactions from investors that, in hindsight or otherwise, might make the misrepresentation appear material." *Id.* (emphasis in original). Plaintiffs' out-of-circuit, non-precedential cases merely provide that analyst questions may help clarify the meaning of an otherwise vague answer by placing it in the appropriate context.[3] But Defendants cite these cases for an entirely different proposition: that "analyst interest" itself "show[s] statements were material." Opp. at 18. That is not the law. *Greenhouse*, 392 F.3d at 656.

      **c.**      **Plaintiffs otherwise fail to plead "materiality" of alleged misstatements.**

Notwithstanding Plaintiffs' contention in the Opposition, the market's purported reaction to Driven's announcement of integration delays does not prove the "materiality" of the alleged misstatements. Opp. at 19. Plaintiffs' cases do not support their position. In *Ganino*, the Second Circuit did not use stock price movements to prove or disprove the materiality of a statement. 228 F.3d at 167. To the contrary, the court cited to another case "declining . . . to infer . . . allegedly material statements . . . 'from the movement of stock price alone . . . given the abundance of market variables.'" *Id.* (quoting *Silver v. H & R Block*, Inc., 105 F.3d 394, 397 (8th Cir. 1997)).[4] Plaintiffs cite to other circuits to support their theory because the Fourth Circuit has "explicitly refrain[ed]"

---

[3] *In re Dentsply Sirona, Inc. Sec. Litig*., 665 F. Supp. 3d 255, 284 (E.D.N.Y. 2023) (alleged misstatement made "in response to . . . questions by analysts" but not describing it as evidence of materiality); *In re St. Jude Med., Inc. Sec. Litig*., 836 F. Supp. 2d 878, 888 (D. Minn. 2011) (analyst question was relevant to clarify otherwise "vague" response, not because analyst interest).

[4] Similarly, in *No. 84 Emp. Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, the Court was responding to defendant-appellees' request that the Court apply a "per se" rule that "if there has been no immediate change in the stock price, the alleged misrepresentations [ ] must have been immaterial." 320 F.3d 920, 934 (9th Cir. 2003). The Court refused to adopt that "bright-line rule." *Id.* (applying the "reasonable investor" test and rebutting, separately and as dicta, the idea that no immediate market drop was proof the statements were immaterial).

from taking a position on the "thorny issue" of whether market movement can indicate materiality. *Greenhouse*, 392 F.3d at 660–61 (acknowledging—but not adopting—"majority rule" in other circuits that market movement "can be *some* evidence, but not . . . *dispositive* evidence" of materiality) (emphasis in original).

Similarly, the importance of Driven's auto glass repair business to the Company does not make an alleged misstatement material as a matter of law. Rather, the scale and complexity of Driven's auto glass repair acquisitions and across the Company militate against fixation on any one issue. Other courts have found that during "massive [merger] integration[s]," "the market would have regarded . . . discrete . . . service problems . . . as immaterial." *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d at 892. Again, Plaintiffs' reliance on non-precedential, out-of-circuit district court cases does not help them. Those cases merely state that an *important fact* about an important business segment is material, not that any problem within that segment is significant. Driven is not contending that its auto glass repair business is insignificant but rather that the *alleged misstatements* were immaterial because they were too vague to "significantly alter" the "total mix" of information. *Keeney*, 306 F. Supp. 2d at 531.

### d. Driven's forward-looking statements about its auto glass repair business are protected by the PSLRA's safe harbor.

Contrary to Plaintiffs' arguments in the Opposition, Driven's forward-looking statements about its auto glass repair business are protected by the PSLRA's safe harbor. *See* App'x B, C; AC ¶¶ 139, 141, 147. The PSLRA prescribes a disjunctive test whereby a forward-looking statement is protected if it is either (1) accompanied by sufficient cautionary language or (2) made without actual knowledge of its falsity. *See* 15 U.S.C. § 78u–5(c)(1)(B). Plaintiffs have failed to plead that Defendants made any of the alleged misstatements, AC ¶¶ 139, 141, 147, with actual knowledge they were false. *See infra* Section B. And even if Plaintiffs could establish knowledge,

8

Driven clearly disclosed that (1) it could "discover liabilities or deficiencies associated with any companies acquired," Belelieu Decl. Ex. 1, 2022 Form 10-K at 18;[5] (2) "may not be able to successfully integrate acquired businesses," *id.*; and (3) "interruptions associated with . . . integrating . . . software programs contemporaneously could adversely impact the operation of our locations." *Id.* at 25; *see also* App'x B. Driven's alleged misstatements are therefore inactionable. *See In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 233 (S.D.N.Y. 2021) ("[F]ailure to integrate successfully . . . in the expected time frame . . . may adversely affect our future results"); *In re Tibco Software, Inc.*, 2006 WL 1469654, at *27 (N.D. Cal. May 25, 2006) (same).

Nor does the Opposition plausibly argue that the statements were not forward-looking. *See* App'x C; App'x B; AC ¶¶ 139, 141, 149. Plaintiffs point to a number of alleged misstatements that they argue are not forward-looking, Opp. at 22, but those are not the statements that Defendants suggest were forward-looking. Furthermore, Plaintiffs' contention that some statements are "present tense" is irrelevant to whether they are forward looking. AC ¶ 139 ("making . . . progress"), ¶ 141 (same), ¶ 149 ("currently integrating" and "expect glass margins to expand from here"). That is not the test. "[L]ooking at the full context of the phrase[s] allows us to infer that" the present tense words such as "continue" or "anticipate" signal "Defendants' hope that the current positive results will remain the same as time elapses." *Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 389 (4th

---

[5] The Court may properly consider the documents referenced in this brief and attached to the October 14, 2024, Declaration of Christopher Belelieu because they are integral to and explicitly relied upon in the Complaint. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (holding that courts "must examine the facts as a whole, including facts found in 'documents incorporated into the complaint by reference'" when analyzing a securities fraud claim) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *see, e.g.*, AC ¶¶ 27, 28, 48, 74, 107, 117, 121, 131 (citing and quoting SEC filings, press releases, and earnings calls). All references to exhibits herein are references to exhibits to the October 14, 2024, Belelieu Declaration.

Cir. 2023). In such a context, use of the "present tense . . . does not prohibit the Safe-Harbor Protection from applying because it cannot meaningfully [be] distinguished from Defendants' goals." *Id.* (internal quotation marks omitted).

### 2. Plaintiffs Fail to Plead Materially False and Misleading Statements about USCW

Plaintiffs' allegations concerning alleged misstatements about USCW fare no better. First, the Opposition attempts to shoehorn innocuous and uncontroversial statements into a Section 10(b) claim by impermissibly pleading "fraud by hindsight." Opp. at 25–28. Second, Plaintiffs again fail to explain why vague statements of optimism about USCW or a "commitment" to improvement are not "puffery" or otherwise immaterial. Opp. at 29. Third, *even if* certain statements were false or misleading—which they are not—the Opposition fails to show they are not protected as forward-looking statements under the PSLRA's "safe harbor." Opp. at 30.

#### a. Plaintiffs fail to allege any facts showing that alleged misstatements about USCW were in fact false.

Instead of demonstrating the falsity of Defendants' statements about USCW, Plaintiffs instead choose to bury these allegations in string citations (if they cite them at all) in their Opposition. *Compare* Opp. at 25–30 *with* AC ¶ 115 (Driven is "committed to having the best stores"), ¶ 117 (Driven has "over 300" U.S. car washes), ¶ 121 (Driven is "continu[ing] its growth trajectory" by "open[ed] its 350th express car wash"), ¶ 127 ("continue[d] to grow our Wash Club program"), ¶ 132 (same), ¶ 134 (car wash business "more than doubled" since "August 2020" and "open[ed] . . . its 400th car wash"). The reason is clear; these statements are uncontroversial facts that were not corrected by—and are not even related to—the eventual "write down" of USCW at the root of Complaint. Opp. at 26.

The Opposition focuses on the statement that "any deferred maintenance . . . is done, so the equipment is working beautifully" to argue that Driven represented it had no issues with

equipment maintenance and was increasing its capital investments in equipment maintenance across the company. *See* Opp. at 8, 25, 28–29, 40 (citing AC ¶ 123). But Plaintiffs' description is entirely misleading. As Defendants' opening brief made clear, Br. at 8–9, Mr. Fitzpatrick's statement was in response to an analyst who asked *only* about Driven's *Nashville* locations, not its carwash business generally. *See* Ex. 9, Q2 2022 Earnings Call Tr. at 17–18 (reporter asking about "rebranding work at the Take 5 locations *in Nashville*" and Defendant Fitzpatrick responding that "*in Nashville*, so look early days, but the experience for the customer is significantly better" and "any deferred maintenance that was there [*in Nashville*] is done, so the equipment is working beautifully") (emphasis added). Defendant Fitzpatrick was not making representations about the Company's performance, capital expenditures, or strategy as a whole. And Plaintiffs do not allege that the statement was false as to the Nashville locations.

The Opposition's arguments regarding the remaining alleged misstatements similarly fail. AC ¶¶ 119, 127, 131, 136. To the extent Defendants represented that they were "continuing . . . to invest" in equipment and other items, Driven *did increase* its capital expenditures in 2022. *See* Ex. 1, 2022 10-K at 53 (Driven "increase[d] . . . capital expenditures [by] $275 million" compared to the prior year). Even if it had not, promises to "continue" investing are not promises of a net increase in capital expenditures.[6] *See In re DXC Tech. Co. Sec. Litig.*, 2020 WL 3456129, at *10 (E.D. Va. June 2, 2020), *aff'd sub nom. KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601 (4th Cir. 2021) ("[T]he allegation that [Defendant] was making significant cuts to its workforce does

---

[6] Relatedly, the Opposition takes uncontroversial statements about Driven's "Wash Club" loyalty program out of context. Opp. at 25; *see* AC ¶¶ 125, 127. Driven's statements about the "Wash Club" makes clear that the program helped with customer "stickiness" and improved the "predictability" of "cash flows" in a relative, not an absolute sense. AC ¶¶ 125, 127. In other words, the Wash Club made customers more loyal rather than less and made cash flows more predictable rather than less; it did not guarantee *absolute* loyalty or *absolute* predictability, especially in a business environment where many other factors are at play.

not make plausible that [Defendant] was not also training current workers and recruiting new workers" at the same time).  Plaintiffs' two out-of-circuit cases are not to the contrary.[7]

Plaintiffs' remaining argument that Driven "misattribut[ed]" the cause of "headwinds" in the business to "macroeconomic" and other factors similarly fails.  Opp. at 26–27; *see* AC ¶¶ 127, 131, 136.  Neither the Complaint nor the Opposition demonstrates beyond bare allegations either that (1) "macroeconomic" factors were not in fact relevant to the performance of USCW at the time or (2) the same-store sales decline was in fact a result of the "equipment" or "customer service" issues Plaintiffs allege.  And even if Plaintiffs pleaded such facts, they would not render Defendants' statements *false when made.  See In In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 676–77 (D. Md. 2018) (contemporaneous company reports "support[ed] the statement" and Plaintiff could not plead fraud by hindsight); *Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 587 (D. Md. 2017) (plaintiffs' "disagree[ment] with Defendants' . . . conclusions" not tantamount to "false[] or inaccurate[]" statements).  Plaintiffs' citation (again) to clearly distinguishable out-of-circuit cases does not alter this analysis.[8]

---

[7] *Hedick v. Kraft Heinz*, 2021 WL 3566602, at *6 (N.D. Ill. Aug. 11, 2021) (defendant alleged that it "was increasing its investment in working media" but "had no long-term strategy for growth" and slashed a brand's budget "from $30 million to $2 million."); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *27 (N.D. Ill. Feb. 13, 2013) ("Cost-cutting" was only considered in relation to scienter and took place against the backdrop "FDA's issuance of" reports "identifying failures that . . . appear to be the result of [spending] cuts.").

[8] *Pub. Emps.' Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1292–96 (N.D. Ga. 2021) (Plaintiffs cited numerous documents, including "Mohawk's reported inventories for each quarter . . . and the increase in the Days In Inventory metric, which represented slowing turnover" to demonstrate "intentional overproduction in the face of insufficient demand" and a "refus[al] to write off huge volumes of scrap [product] that was coded not to be sold to customers."); *Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at *8 (C.D. Cal. Aug. 4, 2017) (Plaintiffs cited a "May 12 Board Presentation" delivered to Defendants that "specifically link[ed] the Company's poor performance to the price increases and the removal of the $5 combo menu.").

### b. Plaintiffs fail to demonstrate that alleged misstatements concerning USCW are not immaterial "puffery."

The Opposition does nothing to rebut the reality that certain alleged misstatements regarding USCW were immaterial "puffing" statements. *See* App'x C. The Opposition contends that general statements about continued investment or Driven's commitment to customer service are somehow specific representations about increased capital expenditures and asserts, without pleading specific facts, that Driven "misattributed" the reasons for declining sales. Opp. at 28–29. But "[v]ague statements predicting growth," *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993), or hopes for a "positive trend . . . to continue" are "nothing more than expressions of optimism," *Employees' Ret. Sys. of the City of Baton Rouge*, 61 F.4th at 377, 386. Statements about the quality of Driven's service or customer loyalty program are similarly inactionable because "almost every [similar company] makes these statements." *In re Constellation Energy Grp., Inc. Sec. Litig.*, 2012 WL 1067651, at *12 (D. Md. Mar. 28, 2012); *see also Longman v. Food Lion, Inc.*, 197 F.3d 675, 685 (4th Cir. 1999) (dismissing substantively identical statements that newly acquired stores were "clean," "conveniently located," and "well suited to . . . our customers" as immaterial). Representations of "continu[ed] investment" without numeric or other clearly defined markers are similarly immaterial, and the Opposition cannot string multiple unrelated quotations together in order to portray these statements as a single, coherent strategy. *See* Opp. at 28; *In re DXC Tech. Co. Sec. Litig.*, 2020 WL 3456129, at *9–10 (dismissing an alleged misstatement that defendants were "investing in their people" as "immaterial puffery").

Furthermore, even statements that may appear material in isolation are not if they do not "significantly alter[]" the "total mix" of information already available to investors. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 617 (4th Cir. 1999) (internal quotation marks omitted). "[G]iven that the very business plan of [Driven] . . . contemplated an ongoing series of acquisitions of disparate

13

companies . . . every investor knew or is charged with knowledge of" the risks of serial acquisitions. *Keeney*, 306 F. Supp. 2d at 531; *see, e.g.*, Ex. 6, 2020 Form 10-K at 2, 15, 21 (Driven may not "successfully integrate . . . acquired businesses"). Driven's statements of confidence in its ability to compete are likewise immaterial where the Company repeatedly disclosed the risks. *Elec. Workers Pension Tr. Fund*, 2013 WL 4014978, at *10; *see also* Ex. 6, 2020 Form 10-K at 14 (company "expect[s] competition to intensify" and "new competitors may emerge at any time").

### c. Driven's forward-looking statements about USCW are protected by the PSLRA's safe harbor.

Even if Plaintiffs had pleaded materially false or misleading misstatements with respect to USCW, the Opposition fails to dispute that certain forward-looking statements are protected by the "safe harbor" provision of the PSLRA. *See* App'x C; AC ¶¶ 115, 119, 127, 131–32, 134, 136. Contrary to Plaintiffs' contentions, the fact that select phrases within these statements are in present tense does not mean they are not forward-looking. *See supra* Section A.1.d.; *Employees' Ret. Sys. of the City of Baton Rouge*, 61 F.4th at 389 ("[L]ooking at the full context of the phrase[s] allows us to infer that the present tense" signaled "Defendants' hope that the current positive results will remain the same."). Like the defendants in *In re DXC Tech. Co. Sec. Litig.*, Driven adequately warned investors that the Company may not "attract and retain qualified personnel," "successfully operate stores in a manner consistent with our standards," or "successfully integrate . . . acquired businesses," including USCW. Ex. 6, 2020 Form 10-K at 2, 15, 21; *see* 2020 WL 3456129, at *8. Similarly, contrary to Plaintiffs' suggestion, a surge in competitive intensity was a possibility disclosed to investors. Ex. 6, 2020 Form 10-K at 14 (describing "highly competitive" industry and listing potential impacts on performance); *see also* Ex. 1, 2022 Form 10-K at 12; Ex. 3, 2021 Form 10-K at 14. It is well held that statements about "investment opportunities" are inactionable where a company warns that it "operate[s] in a highly competitive market" and "other

companies might offer better pricing and more flexible structuring." *In re Triangle Cap. Corp. Sec. Litig.*, 2019 WL 1083777, at *10 (E.D.N.C. Mar. 7, 2019).[9]

**B.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED SCIENTER**

> **1.     Plaintiffs' Allegations That Defendants Were Personally Informed About Alleged Challenges in the Auto Glass Repair & USCW Businesses Are Insufficient to Support a Strong Inference of Scienter**

In addition to failing to plead a single materially false or misleading statement, the Opposition makes clear that Plaintiffs' allegations fail to show that the Defendants' actions were "so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading [Plaintiffs]." *Suarez v. Advance Auto Parts, Inc.*, No. 5:23-CV-563-D (E.D.N.C. Jan. 23, 2025) (citing *Matrix Cap. Mgmt. Fund v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009). Plaintiffs have not done so. Plaintiffs argue that Fitzpatrick and members of Driven's executive team were "personally informed" of adverse facts concerning the at-issue businesses that were withheld from investors, which they argue somehow supports an inference of scienter. Opp. at 32. Even if Plaintiffs had adequately pleaded that Defendants possessed knowledge of "widespread" problems (and they have not), "[s]imply knowing this information would not be enough for scienter. Defendants would also have to know—or, . . . be reckless to a risk—that declining to share that information would render their . . . predictions *misleading*." *San Antonio Fire*, 75 F.4th at 243. Plaintiffs are attempting to "fuse[] an inference [about what

---

[9] Plaintiffs rely on *Rombach v. Chang*, but there, the Second Circuit affirmed dismissal for "failure to state a claim" and found, *inter alia*, that the identified forward-looking statements were protected by safe harbor. 355 F.3d 164, 173–74 (2d Cir. 2004). Plaintiffs' other cases are similarly inapposite. *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 827 F. Supp. 2d 559, 576 (D.S.C. 2011) (Plaintiff pleaded specific facts showing "Defendants [already] knew of the price concessions and lost customer[s]" and so the risks warned of had "in fact already occurred."); *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 769–70 (11th Cir. 2007) (Plaintiffs pleaded that the warned of risks "had already occurred" and supported this allegation with specific facts, including "an email in which the defendants discussed the poor performance . . . at 55% of [the] benchmark.").

15

Defendants allegedly knew] with an inference that [they] intended [their statements] to deceive." *Maguire Fin., LP v. PowerSecure Int'l Inc.*, 876 F.3d 541, 548 (4th Cir. 2017). But Fourth Circuit law is clear that "scienter and knowledge with respect to misrepresentation are distinct components of the requisite analytical framework." *Id.* The Opposition fails to show that the Complaint pleads actual knowledge, and even if it did, Plaintiffs have not demonstrated that, armed with that knowledge, Defendants intended for their alleged misstatements to deceive investors (or were reckless to the risk).

With respect to the alleged misstatements regarding the auto glass repair business, the Opposition reiterates claims that a weekly progress report and Defendants' "own admissions" prove that Defendants acted intentionally or recklessly. As an initial matter, the alleged reports are not enough to support a strong inference of scienter. Plaintiffs claim that weekly progress reports were sent by FE-1 to Mars Shah, President of Driven's North America glass business, and were raised by him to Michael Macaluso, Driven's Executive Vice President and President of its Paint, Collision & Glass segment. Opp. at 33; AC ¶ 100. These weekly progress reports allegedly contained information regarding "integration problems, including fundamental deficiencies in AGN's POS, and delays in the pace of integration." AC ¶ 100. But the allegation that Mars Shah's professional duties included taking amorphous "information on integration . . . up to anyone above him keeping an eye on integration, including Macaluso" AC ¶ 55, is much too vague to support an inference that any of the Defendants had actual knowledge of the undefined integration issues, much less the requisite "*strong* inference of scienter." *KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 611 (4th Cir. 2021).[10] Even if these undescribed issues were elevated to Defendants'

---

[10] Plaintiffs' case law is readily distinguishable. In *Ollila*, defendants alleged problems were isolated to only one project site even though the problems were widespread and present at four

senior management, Plaintiffs have failed to explain how these reports in fact contradict Defendants' statements regarding their continued efforts to make progress in the auto glass repair sector and to "integrate the business," AC ¶¶ 139, 141, 143, 145, 147, 149.  Nor do they support a strong inference that Defendants acted intentionally or recklessly.

Plaintiffs also argue that "Defendants' own admissions make clear that Mason was personally responsible for reviewing and monitoring the auto glass integration progress and timeline."  Opp. at 33.  This argument similarly fails.  To support this allegation, the Opposition merely points to the fact that *the new CFO* Ferrara reviewed undisclosed and undescribed information with "fresh eyes."  *Id.* (citing AC ¶ 100).  This statement by Fitzpatrick certainly does not support an allegation that Mason was "tracking the progress of auto-glass integration," nor does it support a finding of scienter.  Plaintiffs fail to allege facts as to Mason's mental state, instead attempting to infer from her departure and the actions of CFO Ferrara that Mason "was aware of the negative information" and to infer *from that inference* that Mason intended to deceive, manipulate, or defraud investors.  AC ¶¶ 102–05.  But a "plaintiff may not stack inference upon inference to satisfy the PSLRA's pleading standard"—to do so would "violate[] the statute's mandate that the strong inference of scienter be supported by *facts*, not other inferences."  *Maguire Fin., LP*, 876 F.3d at 548 (emphasis added).

Lastly, Plaintiffs' vague allegations that "the executive team" for the auto glass repair business "was in agreement by no later than May 2022" that there were problems with AGN's POS system is completely unsupported and unsubstantiated.  AC ¶ 100; Opp. at 9.  Furthermore,

---

other sites.  2018 WL 792069, at *2.  Scienter could be inferred because two individual defendants "visited the sites themselves to investigate" and management both received a "Monthly Management Report that highlighted specific issues" and "authorize[d] a redesign of [an] entire piping system . . . requiring 40,000 engineering hours instead of the original 5,000 defendants budgeted for."  *Id.*

17

Plaintiffs fail to connect this supposed knowledge about issues with the POS system with information that would support an inference of scienter as it relates to topics separate and apart from the POS system. Plaintiffs cannot "simply . . . assume scienter because part of [the Company's] business plan was not going smoothly." *KBC Asset Mgmt. NV*, 19 F.4th at 612.

With respect to USCW, the Opposition reiterates claims that certain reports sent to Fitzpatrick prove that Defendants acted knowingly and/or recklessly. These alleged reports are not enough to allege scienter with respect to Defendants' alleged misstatements about the USCW.[11] Plaintiffs claim that FE-5 presented Fitzpatrick with a report showing that 75% of the 150 car wash sites operated by Driven's "platform" car wash business at the *end of 2021* required costly full mechanical equipment rebuilds, while 80% required "substantial reinvestment." Opp. at 32; AC ¶¶ 68, 99. Plaintiffs also claim that Fitzpatrick received bi-monthly reports from FE-4 detailing budget cuts and freezes in USCW, directly contradicting Defendants' statements. Opp. at 33; AC ¶¶ 68, 99. But Plaintiffs' own cases demonstrate that mere access to these reports is insufficient. "[I]t's not enough for the plaintiffs to allege briefings to a speaker on the underlying data or the speaker's access to internal reports . . . [i]f access to internal reports is the sole basis for scienter, [a] plaintiff must thus allege facts with particularity showing not only the executive's access to contradictory information but also *the executive's fraudulent intent or reckless disregard*

---

[11] Plaintiffs failed to respond to the argument that the allegations pertaining to the Confidential Witnesses, including FE-4 and FE-5, are made by "former employees," AC ¶ 54 n.1, and impermissibly rely on hearsay. While it is true that "a motion to dismiss is not trial and a plaintiff need not plead evidence," Opp. at 34, courts in this circuit regularly assess the personal knowledge of confidential witnesses in evaluating scienter. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 640 (D. Md. 2012), *aff'd sub nom. Yates*, 744 F.3d 874 ("Hearsay allegations and bald assertions made by confidential witnesses will not defeat a Rule 12(b)(6) motion."); *In re Trex Co., Inc. Sec. Litig.*, 454 F. Supp. 2d 560, 573 (W.D. Va. 2006) ("[C]onfidential witness[es] must have personal knowledge, [and] the testimony cannot be based on hearsay."). As a result, these statements fail to meet the requisite pleading standards.

18

*of accessible information.*"  *IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 706 F. Supp. 3d 1225, 1260 (D. Kan. 2023) (emphasis added) (internal quotation marks omitted). Plaintiffs have not alleged facts sufficient to make that leap.

Even if Fitzpatrick did receive a report in late 2021 that highlighted a need for the Company to invest in equipment rebuilds, this alleged report does not demonstrate scienter on the part of the Company or Fitzpatrick.  Plaintiffs allege that FE-5 presented Fitzpatrick with a report in the form of a "three-year plan," which FE-5 "prepared for restoring equipment to the performance level needed to service customers."  AC ¶ 68.  Plaintiffs also allege that "Fitzpatrick approved the costly maintenance plan on December 19 or 20, 2021" but that the plan was ultimately not implemented. *Id.*  Plaintiffs then allege that, on February 16, 2022 (less than two months after allegedly approving FE-5's plan), Fitzpatrick made a misleading statement when he informed investors that Driven was "continuing to invest into the existing [car wash] asset base as well specifically to upgrade equipment."  AC ¶ 119.  This statement does not contradict the information Fitzpatrick allegedly received from FE-5 at the end of December 2021, nor does it support an inference that Fitzpatrick was intentionally or recklessly misleading investors.  To the contrary, accepting Plaintiffs' allegations as pleaded merely supports an inference that (1) FE-5 presented Fitzpatrick with a plan for improving USCW, (2) Fitzpatrick approved that plan, and then (3) Fitzpatrick informed investors of Driven's plan to invest in USCW.  That FE-5's plan was allegedly not put in motion in the following months does not indicate that Fitzpatrick was acting with an intent to mislead or deceive shareholders.

The bi-monthly P&L Reports loosely described by FE-4 and allegedly containing information about "maintenance cuts" and "freezes" are similarly insufficient to generate a strong inference of scienter.  AC ¶¶ 68, 99.  Plaintiffs merely allege that Fitzpatrick "received bi-monthly

P&L reports discussing maintenance cuts." AC ¶ 68. Plaintiffs make no allegations as to what this "discussion" involved. These broadly pleaded updates related to spending do not contradict any of the alleged misstatements made by Defendants regarding softening retail volume, competition, or other weakness in USCW. AC ¶¶ 123, 125, 127, 129, 131, 136. That Fitzpatrick and other Driven executives allegedly received reports describing maintenance cuts and subsequently made statements to investors acknowledging "weakness" in USCW is plainly not contradictory, nor does it lend itself to an inference that Driven executives intentionally or recklessly mislead investors.

Lastly, the Opposition highlights Plaintiffs' failure to allege that Mason acted with scienter with respect to alleged USCW misrepresentations. Plaintiffs do not even allege that Mason received any specific reports, updates, or briefings regarding USCW, or that Mason had access to or knowledge of any information that directly contradicted her statements regarding USCW. Even if, under a core operations theory, *see* Section B.3, *infra*, or otherwise, Mason is presumed to have had access to the same information as Fitzpatrick or other executives, Plaintiffs have not pleaded any facts demonstrating Mason's intent or reckless willingness to deceive investors. "Without particularized allegations regarding Defendants' knowledge of shortcomings," *KBC Asset Management*, 19 F.4th at 612, Plaintiffs' attempts to assume scienter are unsuccessful.

2. **Even if Plaintiffs Had Sufficiently Alleged Actual Knowledge of Falsity, Allegations of Actual Knowledge of Falsity Alone are Insufficient to Plead Scienter.**

Even if Defendants had actual knowledge of the information alleged by Plaintiffs, knowledge alone is not enough to support the requisite inference of intent to deceive or reckless disregard. The Fourth Circuit has routinely distinguished between knowledge, or "access to information," as Plaintiffs have pleaded here, Opp. at 31, and scienter, which requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind," 15 U.S.C. § 78u-4(b)(2), *i.e.*, "a mental state embracing intent to deceive, manipulate, or defraud," *Yates*, 744 F.3d at 884 (quoting *Tellabs*, 551 U.S. at 319). To establish a "cogent and compelling" inference of scienter, *Maguire Fin., LP*, 76 F.3d at 546–47, Plaintiffs must plead facts showing that the alleged conduct was "either intentional or severely reckless," *Yates*, 744 F.3d at 884. Here, Plaintiffs' "argument fuses an inference that [the executive] knew enough to realize that his characterization was technically incorrect with an inference that he intended it to deceive." *Maguire Fin., LP*, 876 F.3d at 548. To conflate knowledge with an intent to deceive, "as [Plaintiffs] would have [the court] do, would read the scienter element out of the analysis in contravention of the PSLRA's exacting pleading standard." *Id*. But Plaintiffs "may not," as they do here, "stack inference upon inference to satisfy the [Section 10(b)] pleading standard" without pleading facts describing Defendants' actual knowledge or mental state. *Id.*

**3.**     **Plaintiffs' Allegations That Defendants Should Have Known About Alleged Challenges in the Auto Glass Repair & USCW Businesses Are Insufficient to Support a Strong Inference of Scienter**

In their Opposition, Plaintiffs ask the Court to infer that because the alleged misstatements concerned the "core operations" of the Company, Defendants must have been aware their misstatements were false. This argument fails. Plaintiffs cite several cases for this premise, all of which restate the general concept of a "core operations" theory of scienter.[12] Opp. at 38. Driven

---

[12] The cases cited by Plaintiffs make clear that the determination of whether or not the alleged misstatements concern "core operations" of a company is just one factor of many and is not sufficient, standing alone, to infer scienter. *See Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 527–28 (D. Md. 2022) ("[T]he Court finds that [vaccine development] was a core operation of Novavax, and that this fact makes it more plausible that [the company's executive officers] were aware of the facts underlying the allegedly false statements and material omissions."); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 606 (E.D. Va. 2015) (A core operations determination is simply "relevant to the Court's holistic analysis"); *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 784 (E.D. Va. 2015) ("While it cannot be concluded that Defendants acted intentionally or recklessly on this fact alone, [the core operations allegations are] relevant to the Court's holistic analysis.").

21

does not dispute Plaintiffs' allegations that its auto glass repair and USCW businesses were important. *Id.* at 38–39. But this is not sufficient to support an inference of scienter. The Fourth Circuit has routinely held that such allegations may be relevant to a "holistic analysis of scienter," "bare allegations that officers have knowledge of key facts because of their positions or because such knowledge relates to the business's core operations are not enough, standing alone, to support a strong inference of scienter." *KBC Asset Mgmt. NV*, 19 F.4th at 612 (citations omitted) (internal quotation marks omitted). In *Yates*, this Circuit rejected the contention that defendants "must have acted intentionally or recklessly . . . merely because (1) they were senior executives, and (2) the [subject of alleged misstatements] represented a core business of the Company." 744 F.3d at 890. The Opposition makes clear that Plaintiffs cannot make the requisite showing.

Plaintiffs' reliance on allegations that "the issues that were concealed from the market were widespread and severe" fares no better. Opp. at 39. Plaintiffs have failed to plead specific facts demonstrating that Defendants' possessed knowledge of "widespread" problems with the newly acquired businesses. Even if Plaintiffs had established that the "progress reports" allegedly circulated within mid-level management, AC ¶¶ 100, 101, 110, contained information on acquisition growing pains that contradicted Defendants' public statements—and Plaintiffs have not—such allegations would still be insufficient to establish scienter "without additional detailed allegations establishing the defendants' actual exposure to the [alleged issues]." *Yates*, 744 F.3d at 890. Plaintiffs are seeking to "assume scienter," *see KBC Asset Mgmt. NV*, 19 F.4th at 612, rather than alleging facts supporting the strong inference required by the PSLRA.

Finally, even if Plaintiffs' "core operations" theory adequately alleged that Defendants in fact possessed knowledge of "widespread" problems—and it does not—Plaintiffs would have only satisfied half of the scienter inquiry. "Simply knowing this information would not be enough for

scienter. Defendants would also have to know—or, at a bare minimum, be reckless to a risk—that declining to share that information would render their . . . predictions *misleading*."[13]  *San Antonio Fire*, 75 F.4th at 243 (emphasis in original); *see also Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (declining to infer scienter when alleged facts suggest "a plausible alternative inference" that defendant "was simply overwhelmed with integrating a large new division into its existing business").  Plaintiffs' own case law confirms this, and Plaintiffs have failed to plead facts to satisfy the heightened pleading standard applicable to scienter.[14]

### 4. Plaintiffs' Additional Allegations Against Mason Are Insufficient to Support a Finding of Scienter Against Mason or the Company

The Opposition reiterates Plaintiffs' arguments regarding the timing and circumstances of Mason's departure, including her stock sale, and the "speed" with which the new CFO "discovered" information about Driven's performance following Mason's departure, Opp. at 36, none of which gives rise to a strong inference of scienter.  First, an alleged "60 day[]" gap between

---

[13] Plaintiffs claim that *San Antonio Fire* is inapposite because in that case, "the alleged problems did not contradict defendants' statements." Opp. at 40.  This is an accurate statement of the *court's* findings.  *San Antonio Fire*, 75 F.4th at 246–47.  But the *plaintiffs* in *San Antonio Fire*, like Plaintiffs here, alleged specifically that the defendants "misled them into thinking that [a] merger would be more successful than it was by painting a rosy picture of the future without also disclosing critical, adverse facts."  75 F.4th at 240.  There, as here, the plaintiffs identified "*how* the contested statements might mislead" but failed to "address *why* Defendants made those statements."  *Id.* at 241 (emphasis in original).  "Establishing this '*why*' requires . . . showing [1] that Defendants knew the missing information[,] . . . [2] that Defendants knew that the information was relevant for evaluating their projections[ a]nd . . . [3] that Defendants went ahead and left the information out anyway, with the intent to mislead Plaintiffs—or at least with a reckless disregard for the risk that leaving the information out would make their projections misleading."  *Id.* at 241–42 (emphasis in original).  Plaintiffs here spend much of the Opposition rehashing the former while completely disregarding the latter.  Such an approach to scienter was insufficient in *San Antonio Fire*, and it is insufficient here.

[14] *See Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 527–28 (D. Md. 2022) (Core operations theory simply "makes it more plausible that [the company's executive officers] were aware of the facts underlying the allegedly false statements and material omissions.") (emphasis added); In re Genworth Fin. Inc. Sec. Litig., 103 F. Supp. 3d 759, 784 (E.D. Va. 2015) ("[I]t cannot be concluded that Defendants acted intentionally or recklessly [based solely on a core operations theory].").

Mason's departure in early May 2023 (AC ¶ 4) and the new CFO's supposed "discoveries," in early August 2023 (AC ¶ 84) does not support an inference of scienter. *Id.* Plaintiffs argue that terminations support scienter where the "timeline itself is suggestive," Opp. at 36 (quoting *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512, at *11 (S.D.N.Y. May 1, 2024)), but disregard the Fourth Circuit's instruction that the proximity must be "very close," *San Antonio Fire*, 75 F.4th 243–44. A "few months" gap between "allegedly false statements or omissions and the subsequent disclosure of the truth" was too long to infer scienter. *San Antonio Fire*, 75 F.4th at 237, 243 (citation omitted). Plaintiffs also point to *In re UTStarcom, Inc. Sec. Litig.*, but there, the employee departures occurred "*contemporaneously* with the Company's financial restatements." 617 F.Supp.2d at 975 (N.D. Cal. 2009) (emphasis added). Similarly, the Fourth Circuit found in *KBC Asset Management* that "use of the period" of "less than three months" amounted to "little more than pleading fraud by hindsight." 19 F.4th at 612–13. Moreover, the timing and circumstances of Mason's departure do not suggest that she acted with the requisite scienter without "facts sufficient to connect [her] departure with [her] alleged scienter." *Suarez*, No. 5:23-CV-563-D (E.D.N.C. Jan. 23, 2025) (declining to infer scienter from departure of four senior executives in a nine-month period).

The Opposition's restatement of allegations regarding Mason's stock sale fares no better. Opp. at 36–38. Plaintiffs have failed to connect the sale to any fact regarding Mason's mental state other than the bare allegation that "she was aware of the negative information" concerning Driven's prospects. AC ¶ 104. But even if the Complaint adequately alleged that she had such knowledge (it does not), that is not enough to establish scienter. Had Mason failed to exercise her

24

options when she did, they would have expired and she would have lost their value.[15]  That is a legitimate reason for her to exercise her options when she did.  *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007) (sales of 92%, 100%, and 82% of defendants' holdings "unremarkable" in context); *Yates,* 744 F.3d at 890–91 (finding the "extent of . . . divestiture" was not "particularly alarming" where a former CFO sold 78% of his shares prior to the company's announcement of a restatement); *KBC Asset Mgmt.*, 19 F.4th at 610–11 (no strong inference of scienter where defendant sold 77% of shares during class period).  Far from supporting a strong inference of scienter, the context of Mason's option exercise more logically supports an inference that she was divesting herself of her holdings in a company with which she was no longer affiliated.

## C.      PLAINTIFFS FAIL TO STATE A 20(a) CLAIM

Plaintiffs do not dispute that their Section 20(a) claim fails if their Section 10(b) claim fails.  Opp. at 40.  Because their primary claim fails for all of the reasons set forth above and in Defendants' opening brief, their Section 20(a) claim necessarily fails as well.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' opening brief, the Complaint should be dismissed in its entirety with prejudice.[16]

---

[15] As to the SEC forms for Mason's sale, MTD Br. at 36, Plaintiffs' out-of-circuit citations are not persuasive.  Opp. at 37 n.10.  This Circuit has held that "in determining the total mix of publicly available information, a court ruling on a 12(b)(6) motion may look to . . . SEC filings . . . and other material on which the plaintiff's allegations necessarily rely."  *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 313 n.3 (4th Cir. 2019) (internal quotation marks omitted).

[16] Plaintiffs' request for leave to amend should be denied, and the Court should dismiss the Amended Complaint with prejudice.  Plaintiffs do not identify any new or additional facts that they would plead in a further amended pleading, despite the fact that more than a year has passed since the initial complaint in this action was filed.

25

Dated: January 27, 2025
Charlotte, North Carolina

Respectfully submitted,

/s/ S. Frederick Winiker, III (with permission)

/s/ Adam K. Doerr

**WINIKER LAW FIRM, PLLC**
S. Frederick Winiker, III, Esq.,
*N.C. Bar No. 22390*
352 N Caswell Rd
Charlotte, NC 28204
Tel.: (704) 333-8440

**ROBINSON, BRADSHAW & HINSON**
Adam K. Doerr, *N.C. Bar No. 37807*
Emma W. Perry, *N.C. Bar No. 58848*
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246
Tel.: (704) 377-8114

**ROTTENBERG LIPMAN RICH, P.C.**
Steven Kayman (*pro hac vice pending*)
Jennifer A. Kreder (*pro hac vice pending*)
230 Park Ave., 18th Floor
New York, NY 10169
Tel.: (212) 661-3080

**GIBSON, DUNN & CRUTCHER LLP**
Christopher D. Belelieu *(pro hac vice)*
Nathan C. Strauss *(pro hac vice)*
Bethany Saul *(pro hac vice)*
200 Park Ave.
New York, NY 10166
Tel.: (212) 351-4000

*Counsel for Defendant Tiffany L. Mason*

*Counsel for Driven Brands Holdings Inc. and Jonathan G. Fitzpatrick*

26

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, order in *In re: Use of Artificial Intelligence*, Dkt. No. 3:24-mc-104, the undersigned counsel hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 27th day of January, 2025.

/s/ Adam K. Doerr
Adam K. Doerr