# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:23-cv-895-MOC-DCK

GENESEE COUNTY EMPLOYEES'          )
RETIREMENT SYSTEM, on Behalf of Itself and   )
all Others Similarly Situated,        )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )         **ORDER**
                                      )
DRIVEN BRANDS HOLDINGS, INC, ET AL.,  )
                                      )
            Defendants.               )

 

**THIS MATTER** is before the Court on Defendants' Motion for Reconsideration (Doc.

No. 48). Having considered the parties' arguments, the Court **GRANTS** Defendants' Motion for

Reconsideration but **DENIES** Defendants' Motion to Dismiss (Doc. No. 37) upon

reconsideration.[1]

## I.     Background[2]

This case arises from Defendants' alleged false and misleading statements about

Defendant Driven's strategic growth in building a nationwide auto-glass operation and growing

its car wash business. In assessing Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6),

the Court presumes that the factual allegations in Plaintiff Genesee County Employees'

---

[1] The Court denies Defendants' request for a hearing on its Motion for Reconsideration because the parties have adeptly briefed the issues before the Court and oral argument will not further the aid the Court in resolving this matter.

[2] The Court adopts the factual background set forth in its Order denying Defendants' Motion to Dismiss. (Doc. No. 45). For convenience, the Court recites the background as set forth in that Order but adds facts pertinent to the resolution of Defendants' Motion to Reconsider.

Retirement System's ("Plaintiff") Amended Complaint, including those described below, are true.

Defendant Driven is the country's largest automotive care provider. (Doc. No. 31 ¶ 27). Defendant Driven told investors that its M&A success was driven by a proven and reproducible "bolt-on" or "tuck-in" strategy that gave it a competitive advantage and helped achieve growth. (Id. ¶ 32). Defendant Driven told investors that it planned to grow rapidly, and that two of the most important parts of its growth plan were to "bolt on" auto-glass businesses and to grow earnings in its car wash business. (Id. ¶ 36). Plaintiff alleges that Defendants made various statements assuring investors that Defendants were making progress with those plans. (Id. ¶ 45, 47). However, the auto-glass campaign was experiencing serious problems, slowing the timeline and making it impossible to reach Defendants' deadlines. (Id. ¶ 59, 62). Moreover, Defendants told investors that the car wash equipment was working beautifully. (Id. ¶ 47). However, most of the car washes required either full rebuilds or substantial reinvestment, which Defendants failed to make. (Id. ¶ 68).

In October 2022, Defendants announced that the auto-glass platform was still a year away from being able to service insurance providers, and that same-store sales in the car wash business had declined year-over-year. (Id. ¶ 74). Defendant Driven's stock price declined by more than 7% on the day of those announcements. (Id. ¶ 75). On May 8, 2023, Defendant Driven's CFO, Defendant Mason, was terminated, and she subsequently sold nearly 70% of her stock in the company. (Id. ¶¶ 82–83). On August 2, 2023, Defendant Driven disclosed that it was several quarters behind on its auto-glass integration and acknowledged that it had been seeing declines in car wash business sales over the past two years. (Id. ¶¶ 84–85). Defendant Driven reduced its

-2-

EPS guidance by 24%, though it had reaffirmed it prior to Defendant Mason's firing. (Id. ¶ 86). Defendant Driven's stock price dropped by 41% from close on August 1, 2023 to close on August 2, 2023. (Id. ¶ 88). In September 2023, Defendant Driven announced that it did not expect to complete auto-glass integration until 2024, that it would write-down the business by $851 million, and that it would close dozens of car washes and pause new openings. (Id. ¶¶ 94–95).

On December 22, 2023, Plaintiff filed a Complaint alleging (1) violation of Section 10(b) and 10b-5 of the Exchange Act against all Defendants, and (2) violation of Section 20(a) of the Exchange Act against individual Defendants Fitzpatrick and Mason. (Doc. No. 1). On August 13, 2024, Plaintiff filed an Amended Complaint, making the same allegations. (Doc. No. 31). On October 14, 2024, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 37). Plaintiff filed a Response, and Defendants filed a Reply. (Doc. Nos. 42, 43). The Court denied Defendants' motion. (Doc. No. 45). In its Order, the Court recited the pleading standard applicable to run-of-the-mill Rule 12(b)(6) motions, i.e., that that the Complaint must only set forth "enough facts to state a claim that is plausible on its face." (Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Then, the Court stated that "given the lenient pleading standards of Iqbal and Twombly, the Court will deny the motion to dismiss, pending further development of the record." (Id.).

Defendants moved the Court to reconsider, arguing that Plaintiff's claims are subject to the heightened pleading standard set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Doc. Nos. 48, 49).

II.     **Discussion**

The Court may grant a motion to reconsider in at least three circumstances: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation modified).[3] Defendants contend that the Court made a "clear error" of law by reviewing Plaintiff's claims under the plausibility standard of Iqbal and Twombly instead of the heightened particularity standard required by the PSLRA. The Court agrees.

The PSLRA requires plaintiffs alleging violations of 15 U.S.C. § 78j (Section 10(b) of the Securities Exchange Act of 1934) and 17 C.F.R. § 240.10b-5 (Rule 10b-5) to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[4] 15 U.S.C. § 78u-4(b)(2)(A); see Public Emps.' Ret. Ass'n v. Deloitte & Touche LLP, 551 F.3d 305, 311–12 (4th Cir. 2009); In re Computer Scis. Corp. Secs. Litig., 890 F. Supp. 2d 650, 661–62 (E.D. Va. 2012). In so doing, the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Accordingly, the Court should have reviewed Plaintiff's Amended Complaint under the PSLRA's heightened pleading standard.

---

[3] But see Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1473 (4th Cir. 1991) ("Interlocutory orders and judgments are not within the provisions of 60(b), but are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires.").

[4] The Court assumes without deciding that Plaintiff's 15 U.S.C. § 78t(a) (Section 20(a) of the Securities Exchange Act) must also be pled with particularity.

-4-

However, even under this heightened standard of review, the Court remains convinced that Plaintiff sufficiently alleged that Defendants violated Section 10(b), Rule 10b-5, and Section 20(a).

"In determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences. . . . The inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." Public Emps.' Ret. Ass'n, 551 F.3d at 312 (citation modified) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007)). The Court "evaluate[s] [Plaintiff's] allegations of scienter holistically," but "only afford[s] [its] allegations the inferential weight warranted by context and common sense." Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc., 576 F.3d 172, 183 (4th Cir. 2009).

Here, Plaintiff provided extensive detail buttressing its allegations against Defendants and provided statement-by-statement analyses regarding how and why Defendants' statements were fraudulent and caused Plaintiff harm. Accordingly, Plaintiff sufficiently pled that Defendants violated Section 10(b), Rule 10b-5, and Section 20(a). Therefore, Defendants' Motion to Dismiss is denied.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Reconsideration (Doc. No. 48) but **DENIES** Defendants' Motion to Dismiss (Doc. No. 37).

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Reconsideration (Doc. No. 48) is **GRANTED** and Defendants' Motion to Dismiss (Doc. No. 37) is **DENIED**.

-5-

Signed: October 29, 2025

Max O. Cogburn Jr
United States District Judge

-6-