# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DRIVEN BRANDS HOLDINGS INC., JONATHAN G. FITZPATRICK, and TIFFANY L. MASON,<br><br>Defendants. | Case No. 3:23-cv-00895-MOC-DCK<br><br>Judge: Honorable Max O. Cogburn, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ............................................................... 1

II.  BACKGROUND OF THE LITIGATION.......................................................... 3

III. ARGUMENT ...................................................................................... 5

    A.   The Court Should Grant Preliminary Approval of the Proposed Settlement.......... 5

        1.   The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator...................... 7

        2.   The Proposed Settlement Falls Well Within the Range of Approval ........ 8

        3.   The Settlement Treats All Settlement Class Members Fairly.................. 10

        4.   The Settlement Does Not Excessively Compensate Plaintiffs' Counsel ................................................................................ 12

        5.   Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ................................................ 13

    B.   The Settlement Class Should be Certified .......................................... 13

        1.   The Settlement Class Is So Numerous that Joinder Is Impracticable ....... 14

        2.   There Are Common Questions Of Law And Fact .................................... 15

        3.   Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class.................................................................................. 16

        4.   Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.................................................... 16

        5.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 17

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS................ 18

V.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................... 20

VI.  CONCLUSION.................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................19

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ...............................................................20

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
   270 F.R.D. 247 (D.S.C. 2010) ..................................................................20

*In re Emergent BioSolutions Inc. Sec. Litig.*,
   2025 WL 654108 (D. Md. Feb. 27, 2025) .................................................14

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ..........................................................8

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...........................................15

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
   2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ......................................17, 19

*In re Jiffy Lube Securities Litigation*,
   927 F.2d 155 (4th Cir. 1991) ......................................................................8

*In re NeuStar, Inc. Sec. Litig.*,
   2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ...........................................16

*In re NII Holdings, Inc. Sec. Litig.*,
   311 F.R.D. 401 (E.D. Va. 2015) ..........................................................17, 18

*Ollila v. Babcock & Wilcox Enters., Inc*,
   No. 3:17-cv-109, slip op. (W.D.N.C. Aug. 30, 2019) ................................21

*Phillips v. Triad Guar. Inc.*,
   2016 WL 1175152 (M.D.N.C. Mar. 23, 2016) .........................................21

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
   2021 WL 1659848 (E.D. Va. April 23, 2021) ..........................................21

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .............................................12

*In re Red Hat, Inc. Sec. Litig.*,
    2010 WL 11668099 (E.D.N.C. Dec. 10, 2010) ....................................................................14

*Robinson v. Carolina First Bank NA*,
    2019 WL 719031 (D.S.C. Feb. 14, 2019) .........................................................................18

*S.C. Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990).......................................................................................7

*Schwartz v. Urban Outfitters, Inc.,*
    2016 WL 7626720 (E.D. Pa. Oct. 31, 2016).......................................................................9

*Seaman v. Duke Univ.*,
    2017 WL 11502696 (M.N.D.C. Sept. 29, 2017)................................................................21

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020)....................................................................15

*Simpson v. Specialty Retail Concepts*,
    149 F.R.D. 94 (M.D.N.C. 1993) ......................................................................................17

*In re Snap Inc. Sec. Litig.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021).....................................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007)..........................................................................................................20

*In re The Mills Corp. Sec. Litig.,*
    265 F.R.D. 246 (E.D. Va. 2009) ......................................................................................14

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)..................................................................12

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
    2022 WL 525807 (D.N.J. Feb. 22, 2022) ...........................................................................9

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..........................................................................................................17

*West v. Cont'l Automotive, Inc.,*
    2018 WL 1146642 (W.D.N.C. Feb. 2, 2018) ......................................................................7

*Williams v. Henderson*,
    129 F. App'x 806 (4th Cir. 2005) .....................................................................................16

**STATUTES AND RULES**

Securities Exchange Act of 1934 § 10(b)
    15 U.S.C. §78j(b) ..................................................................................................6

Securities Exchange Act of 1934 § 20(a)
    15 U.S.C. §78t(a) ..................................................................................................6

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4(a)(7) ................................................................................. *passim*

Fed. R. Civ. P.:

    Rule 23 ..................................................................................................................5

    Rule 23(a) ....................................................................................................... *passim*

    Rule 23(b)(3) .......................................................................................................16

    Rule 23(e)(1) .........................................................................................3, 8, 16, 21

    Rule 23(e)(2) ...............................................................................................2, 4, 7, 8

    Rule 23(e)(3) ...........................................................................................................8

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Genesee County Employees' Retirement System ("Genesee"), Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association (collectively "Oakland County," and together with Genesee, "Lead Plaintiffs") are pleased to report that the Parties in this securities class action (the "Action") have reached an agreement, subject to the Court's approval, to settle the Action in its entirety in exchange for a cash payment of $25,000,000 for the benefit of the Settlement Class (the "Settlement"). Lead Plaintiffs now seek preliminary approval of the Settlement pursuant to Rule 23(e)(1).[1]

The proposed $25,000,000 cash Settlement represents an excellent recovery for the Settlement Class. The Settlement eliminates the real risks that protracted litigation might lead to a lesser or no recovery—including significant risks relating to falsity, scienter, loss causation, and damages—and instead guarantees a substantial, near-term recovery for the Settlement Class.

This recovery was possible only after Lead Plaintiffs and Lead Counsel engaged in extensive litigation efforts, including: (i) conducting a thorough investigation of the claims, which included interviews of numerous former Driven employees, nine of whom provided Lead Plaintiffs with detailed, substantive information that was critical to Lead Plaintiffs' allegations and included in Lead Plaintiffs' amended complaint; (ii) drafting and filing a highly detailed amended complaint and fully briefing Defendants' motion to dismiss the complaint; (iii) surviving Defendants' motion to dismiss the amended complaint under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Defendants' motion for reconsideration; (iv) consulting with experts in loss causation and damages; (v) engaging in substantial discovery

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated December 19, 2025 (the "Stipulation"), which is attached as Exhibit 1 to the Motion.

efforts, including reviewing document productions by Defendants totaling more than 70,000 pages, and exchanging numerous letters concerning disputed discovery issues; (vi) submitting a detailed mediation statement before Jed Melnick of JAMS, an experienced mediator in complex litigation, setting forth Lead Plaintiffs' positions on highly disputed issues in the case; and (vii) engaging in vigorous arm's-length negotiations before Mr. Melnick, including at an in-person mediation session conducted on November 13, 2025.

Lead Plaintiffs respectfully request the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement and preliminarily certifying the proposed Settlement Class for the purposes of Settlement, to which Defendants have stipulated and agreed. As set forth below, approval of a proposed class action settlement is a two-step process. The first step—preliminary approval—involves the Court's determination of whether the proposed settlement is within the range of possible judicial approval, endorsement of the means of notice to settlement class members, and scheduling the final fairness hearing (the "Settlement Hearing").[2]

As the Settlement here satisfies each of the factors relevant to this preliminary approval evaluation, Lead Plaintiffs respectfully request that the Court take the first step in this process and enter the Preliminary Approval Order attached as Exhibit 2 to the Motion, which will, among other things:

(i)     preliminarily approve the Settlement pursuant to the Stipulation;

(ii)    preliminarily certify the proposed Settlement Class for settlement purposes;

(iii)   approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

---

[2] At the Settlement Hearing, the Court will have before it more extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and Fourth Circuit law. Following the Settlement Hearing, the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate.

(iv) find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; and

(v) set a schedule and procedures for: (1) disseminating the Notice and publishing the Summary Notice; (2) submitting a Claim; (3) requesting exclusion from the Settlement Class; (4) objecting to the Settlement, the Plan of Allocation, and/or the motion for attorneys' fees and expenses; (5) submitting papers supporting final approval of the Settlement; and (6) the Settlement Hearing.

For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order so that notice may be sent to the Settlement Class and the Settlement Hearing can be scheduled. Pursuant to the terms of the Settlement (Stipulation ¶ 3), Defendants agree to entry of the proposed Preliminary Approval Order and, accordingly, Lead Plaintiffs respectfully suggest that the Motion may be decided without a hearing.

## II. BACKGROUND OF THE LITIGATION

Driven Brands Holdings Inc. ("Driven" or the "Company") is an automotive services company that acquires smaller, local, and regional business and integrates them into its operations to fuel its growth. This Action involves allegations that, during the Class Period (from October 27, 2021 through August 1, 2023, inclusive), Driven and certain of its executives, former Chief Executive Officer Jonathan G. Fitzpatrick and former Chief Financial Officer Tiffany L. Mason (together, the "Individual Defendants") made material misrepresentations and omissions regarding (a) the Company's efforts to create a nationwide auto-glass business by acquiring and integrating smaller companies into a single "platform" and (b) operational execution and customer retention in the Company's car wash business. Lead Plaintiffs allege that these misrepresentations and omissions caused the price of Driven's common stock to be inflated during the Class Period, and that the price declined when the truth was revealed.

On December 22, 2023, this Action was filed in the United States District Court for the Western District of North Carolina (the "Court"), alleging violations of the federal securities laws against Defendants. ECF No. 1. On May 31, 2024, the Court entered an Order appointing Genesee and Oakland County as Lead Plaintiffs, and approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel. ECF No. 20.

On August 13, 2024, Lead Plaintiffs filed an Amended Complaint for Violations of Federal Securities Law (the "Complaint") asserting claims on behalf of purchasers of Driven common stock during the Class Period. The Complaint alleged that Defendants made materially false and misleading statements or omissions concerning: (i) the Company's efforts to create a nationwide auto-glass business by acquiring and integrating smaller companies into a single "platform" and (ii) operational execution and customer retention in the Company's car wash business. The Complaint asserted claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), against all Defendants; and claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants. ECF No. 31.

On October 14, 2024, Defendants filed a motion to dismiss the Complaint. ECF No. 37. On December 13, 2024, Lead Plaintiffs filed their opposition to the motion to dismiss (ECF No. 42) and on January 27, 2025, Defendants filed their reply. ECF No. 43. On February 20, 2025, the Court entered an Order denying Defendants' motion to dismiss in its entirety. ECF No. 45.

On March 6, 2025, Defendants moved for reconsideration of the Court's order on Defendants' motion to dismiss and, in the alternative, moved to certify the Court's order for interlocutory appeal. ECF Nos. 48-49. On October 29, 2025, the Court reconsidered and again denied Defendants' motion to dismiss the Complaint. ECF No. 73.

While Defendants' motion for reconsideration was pending, the Parties proceeded with discovery in the Action starting in May 2025. In response to Lead Plaintiffs' requests for production of documents, Defendants produced over 70,000 pages of documents to Lead Plaintiffs. In addition, the Parties met and conferred between May 2025 and November 2025 and exchanged numerous letters concerning disputed discovery issues.

The Parties began exploring the possibility of a settlement in the fall of 2025. The Parties agreed to engage in private mediation and retained Jed Melnick of JAMS to act as mediator in the Action (the "Mediator"). On November 13, 2025, counsel for the Parties participated in a full-day mediation session before the Mediator. In advance of that session, the Parties exchanged and submitted detailed mediation statements setting forth their positions on highly disputed issues in the case. At the conclusion of the mediation session, Mr. Melnick made a mediator's recommendation that the Parties settle the Action for $25 million, which the Parties accepted on a "double-blind" basis.

On December 19, 2025, the Parties entered into a Stipulation and Agreement of Settlement (the "Stipulation"), which sets forth the terms and conditions of the Settlement.

## III.  ARGUMENT

### A.  The Court Should Grant Preliminary Approval of the Proposed Settlement

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *West v. Cont'l Automotive, Inc.,* 2018 WL 1146642, at *3 (W.D.N.C. Feb. 2, 2018). Indeed, "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions[.]" *S.C. Nat'l Bank v. Stone,* 749 F. Supp. 1419, 1423 (D.S.C. 1990).

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Court approval of

a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2).

Courts grant preliminary approval upon a finding that they "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). For *final* approval of the Settlement, the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] All of these factors are satisfied here, and therefore preliminary approval is appropriate.

---

[3] In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the Fourth Circuit's long-standing approval factors set forth in *In re Jiffy Lube Securities Litigation,* 927 F.2d 155 (4th Cir. 1991), which largely overlap with the Rule 23(e)(2) factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (citing *Jiffy Lube,* 927 F.2d at 159); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by a Court of Appeals).

### 1. The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was achieved after extensive, vigorous negotiations between well-informed and experienced counsel. The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before entering into the Stipulation. Lead Plaintiffs and Lead Counsel have conducted an extensive pre-suit investigation; briefed and defeated Defendants' motion to dismiss and motion for reconsideration; obtained and conducted a review of the documents produced by Defendants; and consulted with experts, including on issues of loss causation and damages. As a result, Lead Plaintiffs and Lead Counsel had a well-informed basis to assess the Action's strengths and weaknesses and the reasonableness of the proposed Settlement.

Moreover, the Settlement was also reached only after arm's-length negotiations between experienced and well-informed counsel, which included a formal mediation session with Jed Melnick of JAMS, a well-respected and experienced mediator, and the exchange of detailed mediation statements.

Lead Plaintiffs fully endorse the Settlement. Lead Plaintiffs Genesee and Oakland County are precisely the type of sophisticated institutional investors that were favored by Congress when it enacted the PSLRA. Moreover, Lead Plaintiffs were well informed of the strengths and weaknesses of the claims and consulted extensively with Lead Counsel throughout the litigation.

Each of these facts strongly supports preliminary approval of the Settlement in this case. *See In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *2 (D.N.J. Feb. 22, 2022) (settlement approved where "Plaintiffs and [Defendant] ultimately agreed to mediate their claims before Jed Melnick of JAMS, a 'nationally recognized alternative dispute resolution firm'"); *Schwartz v. Urban Outfitters, Inc.*, 2016 WL 7626720, at *3 (E.D. Pa. Oct. 31,

2016) (approving settlement given "intensive, arms-length negotiations, including mediation managed by Jed Melnick").

### 2. The Proposed Settlement Falls Well Within the Range of Approval

The Settlement Amount is $25,000,000 in cash. The Settlement accounts for the meaningful risks associated with the litigation—including at class certification, summary judgment, pre-trial motions, trial, and appeals. This Action presented several substantial risks to establishing both liability and damages, which Lead Plaintiffs and Lead Counsel fully recognize, while continuing to believe strongly in the merits of the claims.

The risks of continued litigation and trial concerned each main element of Lead Plaintiffs' claims. Lead Plaintiffs would have been required to prove (i) that Defendants' alleged misstatements and omissions were materially false and misleading when made; (ii) that Defendants knew or recklessly disregarded that the statements and related alleged omissions were false when made (i.e., Defendants acted with "scienter"); (iii) that the revelation of Defendants' alleged fraud caused the alleged loss suffered by Lead Plaintiffs and the Settlement Class (i.e., loss causation); and (iv) the amount of class-wide damages. Defendants would have had arguments in defense of each of these issues.

To start, Lead Plaintiffs faced a real risk that the Court or jury might ultimately find that certain of Defendants' alleged misstatements were vague or aspirational statements that were not material to investors and, thus, not actionable under the securities laws. For example, Defendants have argued that many of the alleged misstatements about improved customer service and integration efforts are similar to those the Fourth Circuit has found to be non-actionable corporate "puffery." While Lead Plaintiffs believe they have responses to these challenges, they presented a significant risk at future stages of the litigation.

8

Defendants also vigorously argued that their alleged misstatements were not made with "scienter," as required under the Exchange Act. For example, Defendants contended that the former employees relied upon by Lead Plaintiffs in the Complaint did not report to the Individual Defendants and therefore cannot speak to the Individual Defendants' personal knowledge. There was a meaningful risk that the Court or jury could find against Lead Plaintiffs on issues of scienter on a complete record at summary judgment or trial.

Lead Plaintiffs faced further significant risks related to proving loss causation and damages. Specifically, there was a material risk that the Court would eliminate from recovery one or both corrective disclosures at class certification, summary judgment, or trial. If the Court were to have eliminated the second corrective disclosure at any stage of the litigation, maximum recoverable damages would have been reduced dramatically. There was also a meaningful risk that the Court or a jury would find that a large portion of the stock price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud—such as macroeconomic retail softness and Driven's mounting rent expenses. Accordingly, the need to "disaggregate" fraud-related damages from the overall stock price declines on those dates was likely to materially lower the amounts of potential recovery in this case.

Further, in order to obtain recovery for the Settlement Class, Lead Plaintiffs would need to prevail at several stages—at class certification, summary judgment, and trial—and, even if they prevailed on those, on the appeals that were likely to follow. Thus, there were significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Given these significant litigation risks, Lead Plaintiffs and Lead Counsel believe that the proposed $25 million Settlement is an excellent result for the Settlement Class. The Settlement

provides a substantial, near-term benefit to the Settlement Class as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery at all, after further proceedings—including at class certification, summary judgment, trial, and following any appeals.

In addition, the Settlement is particularly favorable when compared to the maximum damages that could be recovered for the Settlement Class. Lead Plaintiffs' damages expert has estimated maximum recoverable damages in this case—assuming complete success in establishing liability and loss causation for all the alleged misstatements and throughout the Class Period—of $268.9 million. The Settlement therefore recovers approximately 9.3% of the absolute maximum estimated damages—a favorable recovery in light of the risks of continued litigation. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving securities class action settlement representing "6.4% of the maximum estimated aggregate damages [of] $140,000,000, assuming Plaintiffs can prove all their relevant causation arguments" as "within the range of reasonableness."); *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement "represent[ing] approximately 7.8% of the class's maximum potential aggregate damages" and noting that it is "similar to the percent recovered in other court-approved securities settlements"); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement representing 5.5% of the maximum damages).

### 3. The Settlement Treats All Settlement Class Members Fairly

The Settlement treats all Settlement Class Members fairly and does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. All Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice and was developed by Lead Plaintiffs' damages expert, in consultation with Lead Counsel. The Plan is based on Lead Plaintiffs' allegations that Defendants' materially false and misleading statements and omissions caused artificial inflation in the price of Driven common stock during the Class Period, and that public disclosures on October 26, 2022 and August 2, 2023 each partially corrected the alleged misrepresentations and omissions and removed that inflation.

The Plan calculates a "Recognized Loss Amount" for each purchase of Driven common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the Claimant. The calculation of Recognized Loss Amounts under the Plan will depend on when the Claimant purchased and/or sold their shares, and the value of their shares when the Claimant purchased, sold, or held them. In general, Recognized Loss Amounts are based on the difference in the amount of alleged artificial inflation in the price of Driven common stock at the time of purchase and at the time of sale, or the difference between the actual purchase price and sale price. Under the Plan, the sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Claims Administrator will calculate Claimants' Recognized Loss Amounts using the transaction information that Claimants provide to the Claims Administrator in their Claim Forms.[4]

---

[4] Lead Plaintiffs request that the Court approve retention of Strategic Claims Services ("SCS"), as the claims administrator for this case. SCS has successfully administered numerous complex class action settlements in this District, Circuit, and elsewhere. *See, e.g.*, *In re IronNet, Inc. Sec. Litig.*, Case No. 1:22-cv-00449-RDA-JFA (E.D. Va.) ($6.65 million securities class action settlement handled in 2025); *Sinnathurai v. Novavax, Inc.*, No. 8:21-cv02910-TDC (D. Md.) ($47 million securities class action settlement handled in 2024); *Jones v. Coca-Cola Consol., Inc.*, Case No. 3:20-cv-00654- FDW-DSC (W.D.N.C.) (ERISA class action settlement handled in 2022).

Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost-effective to do so. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

### 4. The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel, and Plaintiffs' Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek a fee not to exceed 25% of the Settlement Fund for all Plaintiffs' Counsel to be paid upon approval of the Settlement and the fee application. A 25% fee award is well within the range of percentage fees that courts in the Fourth Circuit approve in securities class actions. *See, e.g., In re Emergent BioSolutions Inc. Sec. Litig.*, 2025 WL 654108, at *3 (D. Md. Feb. 27, 2025) (awarding 30% of $40 million settlement); *In re Red Hat, Inc. Sec. Litig.,* 2010 WL 11668099, at *1 (E.D.N.C. Dec. 10, 2010) (awarding 30% of $20 million settlement); *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 264 (E.D. Va. 2009) ("it is worth noting as a starting point that percentage awards are often between 25% and 30% of the Fund"). Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $500,000, which may include a request for reimbursement of the costs and expenses of Lead Plaintiffs under the PSLRA.

Lead Counsel's fee and expense application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

### 5. Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, Lead Plaintiffs and Driven have entered into a standard agreement (the "Supplemental Agreement") regarding requests for exclusion ("opt-outs") from the Settlement Class. *See* Stipulation ¶ 37. The Supplemental Agreement sets forth the confidential conditions under which Driven may terminate the Settlement if the opt-outs from the Settlement Class exceed an agreed-upon threshold. This agreement, often referred to as a "blow provision," is a standard feature of securities class action settlements and is generally maintained as confidential in order to prevent potential opt-outs from threatening to trigger the blow provision and leveraging that threat to obtain additional payment from the settling parties. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep [the opt-out threshold] confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). The agreement is available for review *in camera,* if the Court so requests.

### B. The Settlement Class Should be Certified

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Lead Plaintiffs also request certification of the proposed Settlement Class, which has been stipulated to by the

Parties, solely for purposes of the Settlement. Stipulation ¶ 2. The Settlement Class consists of all persons and entities who purchased Driven common stock during the period from October 27, 2021 through August 1, 2023, inclusive. Stipulation ¶¶ 1(i), 1(oo).[5] At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). As demonstrated below, the proposed Settlement Class readily satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

### 1.    The Settlement Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no specific rule as to how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members justifies a class. *Cf. Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005). Moreover, numerosity is "seldom disputed in securities fraud cases," particularly where the volume of shares outstanding is sufficient to infer a class with hundreds, if not thousands, of potential class members. *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *3, 7 (E.D. Va. Sept. 23, 2015) (numerosity found where company had around 60 million shares outstanding on NYSE during class period).

---

[5] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who is, or was during the Class Period, an officer or director of Driven and any members of their Immediate Families; (iv) any affiliates or subsidiaries of Driven; (v) Roark Capital Management, LLC and its direct or indirect subsidiaries, related investment funds, or other affiliates, including Driven Equity LLC and RC IV Cayman ICW Holdings LLC, and any members of those entities; (vi) any entity in which any excluded person has or had a controlling interest; and (vii) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities. Also excluded from the Settlement Class are any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court. Stipulation ¶ 1(oo).

Here, Driven common stock was listed and actively traded on NASDAQ throughout the Class Period. As of November 6, 2023, Driven had over 163 million shares of common stock outstanding, owned by hundreds or thousands of investors. *See* Complaint ¶ 162. Accordingly, the numerosity requirement is met.

### 2. There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id*. In securities fraud litigation, this standard "has been applied permissively," and the existence of one common legal or factual question is sufficient to satisfy Rule 23(a)(2). *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants violated the federal securities laws; (ii) whether Defendants misrepresented or omitted material facts; (iii) whether Defendants acted with scienter; (iv) whether the price of Driven common stock was artificially inflated during the Class Period due to these alleged misstatements; (v) whether Defendants' alleged misrepresentations caused Settlement Class Members to suffer economic losses when the truth was revealed; and (vi) whether Settlement Class Members have sustained damages. These are the exact types of issues that regularly satisfy the commonality requirement in federal securities cases. *See, e.g., In re Jeld-Wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *3 (E.D. Va. Mar. 29, 2021); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015).

### 3. Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality element is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NII Holdings*, 311 F.R.D. at 406. In other words, so long as Lead Plaintiffs "seek to recover damages for losses caused by the same allegedly materially false and misleading statements and omissions," the typicality requirement is met. *Id.* at 407.

Here, Lead Plaintiffs' claims are typical of the Settlement Class's claims because they all allege that they purchased Driven common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions, and are subject to the same proof as the rest of the Settlement Class. Further, Lead Plaintiffs are not subject to any unique defenses that would make them atypical. Thus, typicality is satisfied.

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining adequacy of representation, therefore, requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class." *Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *4 (D.S.C. Feb. 14, 2019).

Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class during the litigation of this Action and its resolution. Furthermore, the interests of Lead Plaintiffs and the other Settlement Class Members are not antagonistic. Lead Plaintiffs' interest in obtaining the

largest-possible recovery in this Action is firmly aligned with all Settlement Class Members. Lead Plaintiffs have also set forth a robust record demonstrating their adequacy by, among other things, filing this Action and actively seeking appointment as Lead Plaintiffs, conducting an extensive investigation of their claims, filing a highly detailed amended complaint, surviving Defendants' motion to dismiss, and pursuing discovery. *See Jeld-Wen*, 2021 WL 1186326, at *4 (adequacy established where plaintiffs "vigorously and competently represented the interests of the proposed class members throughout this litigation").

Lead Plaintiffs also retained Lead Counsel BLB&G, which is highly experienced in litigating complex federal securities class actions and has a long, successful track record. As Court-appointed Lead Counsel, BLB&G also has demonstrated its willingness to commit substantial time and resources to representing the Settlement Class.

### 5. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[6] The proposed Settlement Class satisfies these requirements.

With respect to "predominance," this inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In this case, as is generally so in securities class actions, each element of Lead Plaintiffs' 10(b) claim involves common questions of law and fact that predominate over

---

[6] The manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested").

individualized issues. As the above analysis demonstrates, the common questions of law and fact include whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages caused by the revelation of Defendants' alleged fraud.

With respect to the "superiority" inquiry, "class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws." *In re BearingPoint, Inc. Sec. Litig.,* 232 F.R.D. 534, 545 (E.D. Va. 2006); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission"). The geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. *See BearingPoint*, 232 F.R.D. at 544-45; *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 257 (D.S.C. 2010).

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement. The Claims Administrator will utilize a list of the largest and most common U.S.

18

banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains all of the information required by Rule 23(c)(2)(B) and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Seaman v. Duke Univ.*, 2017 WL 11502696, at *5 (M.N.D.C. Sept. 29, 2017) (citing Fed. R. Civ. P. 23(e)(1)). The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *Ollila v. Babcock & Wilcox Enters., Inc,* No. 3:17-cv-109, slip op. at 4-6 (W.D.N.C. Aug. 30, 2019) (Cogburn, J.) (approving similar notice program in securities class action); *Phillips v. Triad Guar. Inc.*, 2016 WL 1175152, at *1, *5 (M.D.N.C. Mar. 23, 2016) (same); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.,* 2021 WL 1659848, at *3 (E.D. Va. April 23, 2021) (same).

Accordingly, Lead Plaintiffs respectfully submit that the proposed notice procedures are appropriate and should be approved.

## V.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the schedule for Settlement-related events as set forth below. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court needs to schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

| **Event** | **Proposed Timing** | **Example Date**[7] |
|---|---|---|
| Driven to provide or cause to be provide its shareholder lists to the Claims Administrator or Lead Counsel (Preliminary Approval Order ¶ 7(a)) | 15 business days after entry of Preliminary Approval Order | January 21, 2026 |
| Deadline for initial mailing of the Notice and Claim Form to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (which date shall be the "Notice Date") (Preliminary Approval Order ¶¶ 7(b), 7(c)) | 20 business days after entry of Preliminary Approval Order | January 28, 2026 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | 10 business days after the Notice Date | February 11, 2026 |

[7] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on December 29, 2025, and schedules the Settlement Hearing for April 20, 2026.

| | | |
|---|---|---|
| Deadline for filing of papers in support of final approval of the Settlement and Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 28) | 35 calendar days before the date set for the Settlement Hearing | March 16, 2026 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 14, 17, 18) | 21 calendar days before the date set for the Settlement Hearing | March 30, 2026 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 28) | 7 calendar days before the Settlement Hearing | April 13, 2026 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | April 20, 2026 |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 11) | 120 calendar days after the Notice Date | May 21, 2026 |

## VI. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: December 19, 2025

Respectfully submitted,

**TERPENING LAW PLLC**

*/s/ William R. Terpening*
William R. Terpening
221 West 11th Street
Charlotte, North Carolina 28202
Telephone: (980) 265-1700
Facsimile: (980) 265-1729
terpening@terpeninglaw.com

*Liaison Counsel for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner
2121 Avenue of the Stars
Suite 2575
Los Angeles, California 90067
Telephone: (310) 819-3481
JonathanU@blbglaw.com

-and-

Hannah Ross
Alec T. Coquin
Prachi Patel
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
alec.coquin@blbglaw.com
prachi.patel@blbglaw.com

*Counsel for Lead Plaintiffs and Lead Counsel for the Settlement Class*

**VMT LAW, P.C.**
Thomas C. Michaud
Francis E. Judd
Aaron L. Castle
79 Alfred Street
Detroit, Michigan
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
tmichaud@vmtlaw.com
fjudd@vmtlaw.com
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024 Standing Order *In re: Use of Artificial Intelligence*, Dkt. No. 3:24-mc-104, the undersigned counsel hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: December 19, 2025

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner


## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all parties receiving electronic service in this Action.

Dated: December 19, 2025

*/s/ William R. Terpening*
William R. Terpening