# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |
|---|---|
| GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>DRIVEN BRANDS HOLDINGS INC., JONATHAN G. FITZPATRICK, and TIFFANY L. MASON,<br><br>       Defendants. | Case No. 3:23-cv-00895-MOC-DCK<br><br>Judge: Honorable Max O. Cogburn, Jr. |

<br><br>

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES | | 3 |
|  | A. | Plaintiffs' Counsel Are Entitled to An Award of Reasonable Attorneys' Fees from the Common Fund Created by the Settlement | 3 |
|  | B. | The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method | 4 |
|  | C. | The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method | 5 |
|  | D. | Analysis of the Relevant Fourth Circuit Factors Supports the Fee Request | 6 |
|  |  | 1. The Results Obtained for the Settlement Class | 7 |
|  |  | 2. The Reaction of the Settlement Class To Date | 8 |
|  |  | 3. The Quality, Skill, and Efficiency of the Attorneys Involved | 9 |
|  |  | 4. The Complexity and Duration of the Action | 11 |
|  |  | 5. The Contingent Nature of the Fee and Risk of Nonpayment | 13 |
|  |  | 6. The Amount of Time Devoted to the Case by Lead Counsel | 14 |
|  |  | 7. Awards in Similar Cases | 15 |
|  |  | 8. A Cross-Check of Lead Counsel's Lodestar Confirms the Fee Request Is Reasonable | 15 |
| III. | LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES | | 16 |
| IV. | LEAD PLAINTIFFS' REQUEST FOR REIMBURSEMENT UNDER THE PSLRA | | 17 |
| V. | CONCLUSION | | 18 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ................................................................6

*Barber v. Kimbrell's Inc.*,
577 F.2d 216 (4th Cir. 1978) ......................................................................................6, 7

*Blum v. Stenson*,
465 U.S. 886 (1984) .........................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .........................................................................................................3

*In re Celebrex Antitrust Litig.*,
2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ...............................................................13

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...............................................................18

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................................12

*In re Computer Scis. Corp. Sec. Litig.*,
2013 WL 12155436 (E.D. Va. Sept. 20, 2013) .............................................................18

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
2013 WL 12461134 (D. Md. Nov. 4, 2013) ...................................................................8

*Cosby v. KPMG, LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ..............................................................5

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ...............................................................18

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) .................................................................6

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .......................................................................................................12

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2025 WL 654108 (D. Md. Feb. 27, 2025) .......................................................................5

*EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................................9

*In re Flowers Foods, Inc. Sec. Litig.*,
   2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ...........................................................6

*Galloway v. Williams*,
   2020 WL 7482191 (E.D. Va. Dec. 18, 2020) ...........................................................4

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................... *passim*

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................................7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .........................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..................................................................................13

*Jones v. Dominion Res. Servs., Inc.*,
   601 F. Supp. 2d 756 (S.D.W. Va. 2009)................................................................4, 16

*Klein v. Altria Grp. Inc.*,
   No. 3:20-cv-00075-DJN (E.D. Va.)............................................................................17

*Knurr v. Orbital ATK, Inc.*,
   2019 WL 3317976 (E.D. Va. June 7, 2019) .............................................................16

*In re Massey Energy Co. Sec. Litig.*,
   2014 WL 12656719 (S.D.W. Va. June 4, 2014)........................................................16

*McClaran v. Carolina Ale House Oper. Co., LLC*,
   2015 WL 5037836 (D.S.C. Aug. 26, 2015)................................................................16

*In re MicroStrategy, Inc. Sec. Litig.*,
   172 F. Supp. 2d 778 (E.D. Va. 2001) .........................................................................4

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ..............................................................18

*In re Neustar, Inc. Sec. Litig.*,
   2015 WL 8484438 (E.D. Va. Dec. 8, 2015) ...............................................................5

*Nieman v. Duke Energy Corp.*,
   2015 WL 13609363 (W.D.N.C. Nov. 2, 2015)...................................................4, 15, 18

Case 3:23-cv-00895-MOC-DCK    Document 83    Filed 04/27/26    Page 4 of 27

*Ollila v. Babcock & Wilcox Enters., Inc. et al.*,
No. 3:17-CV-00109 (W.D.N.C. Dec. 19, 2019) ...............................................................5

*In re Peanut Farmers Antitrust Litig.*,
2021 WL 9494033 (E.D. Va. Aug. 10, 2021)..................................................................13

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)......................................................................5

*Phillips v. Triad Guaranty Inc.*,
2016 WL 2636289 (M.D.N.C. May 9, 2016) ...................................................7, 8, 10, 13

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
No. 1:19-cv-01031 (E.D. Va. Nov. 18, 2022)..............................................................5, 17

*Plymouth County Ret. Sys. v. GTT Commc'ns, Inc., et al.*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ...........................................................5, 11, 13

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .....................................................................7

*In re Red Hat, Inc. Sec. Litig.*,
2010 WL 11668099 (E.D.N.C. Dec. 10, 2010) .................................................................5

*Robinson v. Carolina First Bank NA*,
2019 WL 2591153 (D.S.C. June 21, 2019)......................................................................14

*In re Royal Ahold, N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006)...................................................................................7

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013).................................................................................10

*In re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021).....................................................................8

*In re Synchrony Fin. Sec. Litig.*,
2023 WL 4992933 (D. Conn. Aug. 4, 2023) ...................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................................4

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ............................................................................. *passim*

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)............................................................5, 8, 11

*In re Wachovia Corp. ERISA Litig.*,
    2011 WL 7787962 (W.D.N.C. Oct. 24, 2011)............................................................................6

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..........................................................................15

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................................4, 17, 18

**Other Authorities**

Federal R. Civ. P. 23(h) ...................................................................................................1

v

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G") respectfully submits this memorandum of law in support of its motion for (i) an award of attorneys' fees for Plaintiffs' Counsel in the amount of 25% of the Settlement Fund; (ii) an award of $335,258.43 for Litigation Expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action; and (iii) awards of $5,105.21 in total to Lead Plaintiffs for costs incurred directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I. INTRODUCTION

The proposed Settlement, which provides for the payment of $25 million in cash to resolve the Action, represents an excellent result for the Settlement Class. In undertaking this litigation, counsel faced numerous challenges to proving liability, loss causation, and damages that posed the serious risk of no recovery, or a substantially lesser recovery than the Settlement. This significant monetary recovery was achieved through the skill, tenacity, and effective advocacy of Lead Counsel, which litigated this Action on a fully contingent basis against highly skilled defense counsel.

As detailed in the accompanying Uslaner Declaration,[2] Lead Counsel vigorously pursued this litigation from its outset by, among other things: (1) conducting an extensive investigation

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated December 19, 2025 (the "Stipulation") previously filed with the Court (ECF No. 77-1) or in the Declaration of Jonathan D. Uslaner in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Uslaner Declaration"), filed herewith. In this memorandum, citations to "¶ __" refer to paragraphs in the Uslaner Declaration and citations to "Ex. __" refer to exhibits to the Uslaner Declaration.

[2] The Uslaner Declaration is an integral part of this submission. For the sake of brevity in this

into the claims asserted in the Action, including speaking with 105 former Driven employees and a thorough review of all publicly available information about the claims (¶¶ 2, 14-15, 75); (2) drafting a detailed 67-page Amended Complaint based on this investigation, which included detailed information provided by former Driven employees (¶¶ 2, 15, 17, 75); (3) defeating Defendants' motion to dismiss the Amended Complaint, and Defendants' motion for reconsideration (¶¶ 2, 18-22, 24, 75); (4) negotiating a case schedule, discovery parameters, a confidentiality agreement and stipulation governing electronically stored information, and preparing and responding to document requests and interrogatories (¶¶ 2, 25-26, 75); (5) obtaining, reviewing, and analyzing tens of thousands of pages of documents produced by Defendants (¶¶ 2, 26-27); (6) consulting with experts on issues of loss causation and damages (¶¶ 2, 75); (7) preparing and submitting a detailed mediation statement before Jed Melnick of JAMS, an experienced mediator in complex litigation, setting forth Lead Plaintiffs' positions on highly disputed issues (¶¶ 2, 28); (8) engaging in vigorous arm's-length negotiations before Mr. Melnick at an in-person mediation session (¶¶ 2, 4, 29, 75); and (9) drafting and negotiating the Stipulation setting out the terms of the Settlement, and related documentation (¶¶ 2, 31).

Lead Counsel respectfully submits that in light of their extensive efforts and vigorous advocacy on behalf of the Settlement Class, and the recovery achieved for the Settlement Class, Lead Counsel's request for an attorney fee award for all Plaintiffs' Counsel of 25% of the Settlement Fund is fair and reasonable.[3] Considering that "as a starting point . . . percentage awards

---

memorandum, the Court is referred to it for a detailed description of, *inter alia*, the history of the Action (¶¶ 11-27); the negotiations leading to the Settlement (¶¶ 28-29); the risks and uncertainties of continued litigation (¶¶ 34-47); and the services Lead Counsel provided for the benefit of the Settlement Class (¶ 2, 75).

[3] The term "Plaintiffs' Counsel" refers to Lead Counsel BLB&G, Liaison Counsel Terpening Law PLLC, and additional counsel for Lead Plaintiffs, VMT Law, P.C.

are often between 25% and 30% of the fund," *In re The Mills Corp. Securities Litig*ation, 265 F.R.D. 246, 264 (E.D. Va. 2009), on a percentage basis, the requested fee is well within the range of fees that courts in this Circuit and elsewhere have typically awarded in securities class actions and other complex class actions with comparable recoveries.

Lead Counsel also respectfully requests that this Court approve the requested litigation expenses of $335,258.43, which were reasonable and necessary for the prosecution and resolution of this Action. In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, no Settlement Class Member to date has objected to the fee or expense requests (*see* ¶ 57), and Lead Plaintiffs support the requests as fair and reasonable (*see* Ex. 2, at ¶¶ 10-11; Ex. 3, at ¶¶ 10-11).

Finally, Lead Counsel respectfully requests that the Court approve the requested awards of $2,100.30 and $3,004.91 to Genesee and Oakland County, respectively, pursuant to the PSLRA, for costs incurred directly related to their representation of the Settlement Class. Lead Plaintiffs' representative reimbursements are fair and reasonable, expressly contemplated by the PSLRA, and consistent with amounts routinely awarded by federal courts to lead plaintiffs in securities class actions nationwide.

## II. LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES

### A. Plaintiffs' Counsel Are Entitled to An Award of Reasonable Attorneys' Fees from the Common Fund Created by the Settlement

Attorneys who achieve a common settlement fund in class actions for the benefit of a class are "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). As the Supreme Court has emphasized, "meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities

and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Given the importance of such suits, "the process of setting a proper fee in a PSLRA case must include an incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case." *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001).

**B.** **The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method**

Courts in this Circuit have explained that "the favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method." *Galloway v. Williams*, 2020 WL 7482191, at \*5 (E.D. Va. Dec. 18, 2020); *see also Jones v. Dominion Res. Servs., Inc.,* 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Nieman v. Duke Energy Corp.*, 2015 WL 13609363, at \*1 (W.D.N.C. Nov. 2, 2015) (Cogburn, J.) (applying "percentage-of-recovery" in awarding counsel attorneys' fees).

The use of the percentage of recovery method aligns with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class. . . ." 15 U.S.C. § 78u-4(a)(6). Also, the Supreme Court has consistently held that the percentage-of-recovery approach is an appropriate methodology for awarding plaintiffs' counsel's fees in a common fund case. *See, e.g.*, *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984).

An alternative method for review of a fee request from a common fund is the "lodestar method," which compares the value of the time worked to the fee requested. Rather than use the lodestar as the primary method, however, courts more often use the lodestar as a "cross check" for

4

the reasonableness of the percentage award. *See In re Neustar, Inc. Sec. Litig.*, 2015 WL 8484438, at *7 (E.D. Va. Dec. 8, 2015) ("the Court will adopt the common practice within this Circuit; the Court will apply the percentage-of-recovery method and then use the lodestar method as a 'cross-check'"); *Mills*, 265 F.R.D. at 260-61 (same).

### C. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Courts look "to fee awards in analogous cases to determine the reasonableness of the percentage requested." *Mills*, 265 F.R.D. at 263-64. As the *Mills* court observed, "percentage awards are often between 25% and 30% of the fund." *Id.* at 264.

A fee percentage of 25% of the Settlement Fund is well within the range of percentage fees typically awarded by courts in the Fourth Circuit in securities class actions with comparable recoveries. *See, e.g.*, *Ollila v. Babcock & Wilcox Enters., Inc. et al.*, No. 3:17-CV-00109 (W.D.N.C. Dec. 19, 2019) (Cogburn, J.), ECF No. 90 at 8 (awarding 25% of $19.5 million recovery); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc., et al.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding 33.3% of $25 million recovery); *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, No. 1:19-cv-01031-MSN-WEF (E.D. Va. Nov. 18, 2022), ECF No. 257 at 2 (awarding 33.3% of $23.5 million recovery); *In re Emergent BioSolutions Inc. Sec. Litig.*, 2025 WL 654108, at *3 (D. Md. Feb. 27, 2025) (awarding 30% of $40 million recovery); *In re Red Hat, Inc. Sec. Litig.*, 2010 WL 11668099, at *1 (E.D.N.C. Dec. 10, 2010) (awarding 30% of $20 million recovery).

The requested fee percentage is also reasonable compared to nationwide securities class action recoveries. *See, e.g.*, *Cosby v. KPMG, LLP*, 2022 WL 4129703, at *1-2 (E.D. Tenn. July 12, 2022) (awarding 33.3% of $35 million recovery); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding 33.3% of $31.9 million recovery); *Thorpe v.*

5

*Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *11 (S.D. Fla. Oct. 17, 2016) (awarding 33.3%

of $24 million recovery); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D.

Ga. Dec. 11, 2019) (awarding 33.3% of $21 million recovery); *In re Banc of California Sec. Litig.*,

2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million recovery*);*

*In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding

33.3% of $18.5 million recovery).

The requested fee percentage of 25% is thus well within the range customarily awarded in

similar cases and is reasonable given the highly favorable recovery achieved for the Settlement

Class.

**D.      Analysis of the Relevant Fourth Circuit Factors Supports the Fee Request**

In determining the reasonableness of the requested fee percentage, courts in the Fourth

Circuit all may consider the following factors:

> (1) the results obtained for the class; (2) the presence or absence of substantial
> objections by members of the class to the fees counsel requested; (3) the skill and
> efficiency of attorneys involved; (4) the complexity and duration of the litigation;
> (5) the risk of nonpayment; (6) the amount of time plaintiffs' counsel devoted to
> the case; and (7) awards in similar cases.

*See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (citing *Mills Corp.*,

265 F.R.D. at 261); *see also In re Wachovia Corp. ERISA Litig.*, 2011 WL 7787962, at *3

(W.D.N.C. Oct. 24, 2011) (same).[4] Each of the foregoing factors is discussed below.

---

[4] These seven factors overlap substantially with those used by some courts within the Fourth
Circuit when applying the lodestar method and analyzing the reasonableness of a multiplier. *See
Genworth*, 210 F. Supp. 3d at 843. These lodestar factors (often referred to as the *Barber* factors)
include: "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill
required to properly perform the legal services; (4) attorney's opportunity costs in pressing the
litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation;
(7) time limitations imposed by the client or circumstances; (8) amount in controversy and results
obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case
within the legal community in which the suit arose; (11) nature and length of the professional

### 1. The Results Obtained for the Settlement Class

In evaluating a fee award, "the most critical factor is the degree of success obtained." *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Phillips v. Triad Guaranty. Inc.*, 2016 WL 2636289, at *4 (M.D.N.C. May 9, 2016) (noting "the Fourth Circuit considers [the degree of success obtained] factor particularly important."). Here, the creation of a settlement fund in the amount of $25,000,000 is an excellent result for the Settlement Class. It will provide Settlement Class Members with a cash recovery that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of continued discovery, motion practice, summary judgment, trial, and appeal.

Lead Plaintiffs' damages expert estimated that the absolute maximum recoverable damages in the Action—which aggressively assumed complete success in establishing liability and loss causation for <u>all</u> of the alleged misstatements, throughout <u>the entire</u> Class Period, and for <u>both</u> of the corrective disclosures, was $268.9 million. Lead Plaintiffs' damages expert further estimated that, if the Court were to have eliminated the alleged auto-glass misstatements from the case following the first corrective disclosure—which was a risk in this Action—maximum recoverable damages would have been reduced by approximately half, to $134 million. The Settlement therefore recovers approximately 9.3% to 18.7% of the absolute maximum estimated damages, before accounting for the need to disaggregate for non-fraud related factors. This level of recovery is substantial and favorable in light of the risks of continued litigation. *See, e.g., In re PPDAI Grp.*

---

relationship between the attorney and client; and (12) fee awards in similar cases." *See Mills*, 265 F.R.D. at 261 n.6 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)). Other courts rely on the twelve Barber factors in determining a reasonable fee under either method. *See In re Royal Ahold, N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) (noting that "under both methods there are numerous factors that may be considered in determining a reasonable fee" and listing the twelve *Barber* factors).

*Inc. Sec. Litig.*, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving securities class action settlement representing "6.4% of the maximum estimated aggregate damages [of] $140,000,000, assuming Plaintiffs can prove all their relevant causation arguments" as "within the range of reasonableness"); *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement "represent[ing] approximately 7.8% of the class's maximum potential aggregate damages" and noting that it is "similar to the percent recovered in other court-approved securities settlements"); *Thorpe*, 2016 WL 10518902, at *3 (approving settlement representing 5.5% of the maximum damages).

The Settlement will provide immediate and certain compensation to the Settlement Class and avoids the substantial risks from continued litigation. *See Phillips*, 2016 WL 2636289, at *6 (finding that a 33.3% fee was reasonable in light of the recovery obtained, time and effort involved, and the substantial risks of continued litigation"); *In re Constellation Energy Grp., Inc. Sec. Litig.*, 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) (awarding a 33.3% fee "given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class").

### 2. The Reaction of the Settlement Class To Date

The Notice advised Settlement Class Members that Lead Counsel would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund and Litigation Expenses not to exceed $500,000. While the deadline has not yet passed, as of this filing, no objection has been received, which supports the fee request. *Genworth*, 210 F. Supp. 3d at 844.[5]

In addition, the 25% fee requested here has been approved by the Court-appointed Lead Plaintiffs. Ex. 2, ¶ 10; Ex. 3, ¶ 10. Lead Plaintiffs—sophisticated institutional investors—are the

---

[5] Should any objections be received, they will be addressed in Lead Plaintiffs' reply papers to be filed no later than May 25, 2026.

type of fiduciaries that Congress envisioned when it enacted the PSLRA.[6] Courts in the Fourth Circuit and elsewhere have held that, in "a PSLRA case in which a fee request has been approved and endorsed by properly-appointed lead plaintiffs," the request "enjoys a presumption of reasonableness." *Mills,* 265 F.R.D. at 261; *see also EVCI Career Colls. Holding Corp. Sec. Litig.,* 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) (noting that "public policy considerations supported the [fee] award" in a case in which a large public pension fund, serving as lead plaintiff, "conscientiously supervised the work of lead counsel, and had given its endorsement to the fee request").

Lead Plaintiffs Genesee and Oakland County actively supervised the prosecution of the Action from its commencement through settlement. Ex. 2, ¶¶ 4-6; Ex. 3, ¶¶ 4-6. Based on their involvement in the Action, Lead Plaintiffs evaluated Lead Counsel's fee request and believe that it is fair and reasonable and warrants approval by the Court. Ex. 2, ¶¶ 10, 16; Ex. 3, ¶¶ 10, 16.

### 3.     The Quality, Skill, and Efficiency of the Attorneys Involved

The quality of the representation of plaintiffs' counsel is an important factor that also supports the reasonableness of a fee request. *See Mills,* 265 F.R.D. at 261.

Lead Counsel BLB&G is among the nation's preeminent law firms in the area of securities class actions with a long and successful track record in such cases. *See* Ex. C to Ex. 5 (BLB&G firm resume). From the outset of this case, Lead Counsel sought to obtain the maximum recovery

---

[6] Congress enacted the PSLRA in large part to encourage investors with a significant financial stake in the outcome of a securities class action to assume control of the litigation and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *See* H.R. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731.

for the Settlement Class. Lead Counsel devoted substantial amounts of attorney time, as well as its own money and other considerable resources, in the vigorous prosecution of this matter.

Notably, Lead Counsel developed the factual allegations and legal theories in the absence of any pending regulatory actions, such as an investigation by the SEC or other governmental agency, upon which Plaintiffs could "piggy back" to develop their allegations. *See, e.g.*, *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014). It was Lead Counsel's comprehensive case investigation—including speaking to over 100 former Driven employees and a thorough review and analysis of the public record—that provided factual support for the allegations of the Amended Complaint. ¶¶ 2, 14-16, 75.

As a result of Lead Counsel's work and skill, the Settlement Class was able to leverage an extremely particularized pleading to successfully defeat Defendants' motion to dismiss, despite the PSLRA's and Rule 9(b)'s stringent pleading requirements. Further, Lead Counsel's reputation in the field as attorneys committed to prosecuting a meritorious case through the completion of fact and expert discovery, summary judgment, and beyond enabled them to negotiate the excellent recovery for the benefit of the Settlement Class. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 683-84 (D. Md. 2013) (finding fee request supported by counsel's experience, engagement in discovery, mediation efforts, motion-to-dismiss briefing, and efficiency in reaching a settlement approximately two years after action's commencement).

The quality of opposing counsel is also considered in assessing fee requests. *See Phillips,* 2016 WL 2636289, at *5 (considering lead counsel's skill and sophistication in light of the fact that defendants were represented by "sophisticated" defense attorneys); *Mills,* 265 F.R.D. at 262. Throughout the Action, Defendants were zealously represented by prominent defense firms, including Gibson, Dunn & Crutcher LLP. In the face of this skilled opposition, Lead Counsel was

able to develop a case that was sufficiently strong to survive a motion to dismiss and settle on terms favorable to the Settlement Class. Lead Counsel's hard work strongly supports the requested fee award.

### 4. The Complexity and Duration of the Action

This Action was litigated for more than two years and, given its complexity and challenges, further litigation would have continued to be difficult and, if taken to trial, would have likely spanned additional years. Courts have long recognized that securities class actions are among the most difficult type of litigation. *See Genworth*, 210 F. Supp. 3d at 844 ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish"); *GTT*, 2021 WL 1659848, at *5-6 (approving 33⅓% fee award in securities fraud class action while noting the "[a]ction involve[d] complex factual and legal issues."); *see also Thorpe*, 2016 WL 10518902, at *3 ("[a] securities case, by its very nature, is a complex animal").

In the absence of the Settlement, Lead Plaintiffs would have proceeded with discovery, including numerous depositions, moved for certification of the class, and then (if successful) advanced to summary judgment. To survive summary judgment, Lead Plaintiffs would need to gather sufficient evidence to establish the elements of their claims, including, for example, scienter (that Defendants acted intentionally or recklessly in misleading investors in Driven common stock) and loss causation (that the allegedly false or misleading statements by Defendants caused the alleged loss suffered by the Settlement Class).

While Lead Plaintiffs and Lead Counsel believed the claims were meritorious, the Action presented several complex issues from the outset that introduced significant risks to achieving a significant recovery. First, this was not a case that was accompanied by a parallel government enforcement action that would typically bolster plaintiffs' ability to establish liability. On the

contrary, Defendants have consistently denied that any of their challenged statements about the integration of Driven's auto-glass business and the operational execution and customer retention of Driven's car wash business were false or misleading when made. ¶¶ 35-38. Further, with respect to scienter, Defendants vigorously argued that, even if any of their statements were false or misleading, Defendants did not have any intent to mislead investors. ¶¶ 40-41.

Lead Plaintiffs also would have confronted risks to establishing loss causation and damages. On these issues, Lead Plaintiffs would need to prove (through expert testimony) that the revelation of the alleged fraud through the alleged corrective disclosures proximately caused the declines in the price of Driven common stock on each of those days, and that any other information released and absorbed by the market on those days played little or no role in the price declines. ¶ 44; *see Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants would contend, with the help of their experts, that the stock price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud—such as the negative impact of weather on the car wash segment, mounting rent expenses, and macroeconomic retail traffic softness. ¶ 44. Due to the complexities of establishing loss causation and damages for corrective disclosures involving multiple unrelated pieces of new Company-specific negative information, both sides would be required to rely on expert testimony at trial, and this element of Lead Plaintiffs' claims would be reduced to "a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury." *Mills,* 265 F.R.D. at 256; *see also City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014) ("Undoubtedly, the Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky battle of the experts and the jury's verdict with respect to damages would depend

on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.").

Even if Lead Plaintiffs defeated Defendants' anticipated summary judgment motions and prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final—a process that could take years. Lead Counsel knows that despite the most vigorous efforts, a firm's success in contingent litigation, such as this, is never assured; there are many class actions in which plaintiffs' counsel expended tens of thousands of hours to win a trial verdict only to see the verdict vacated or reversed, and ultimately receive nothing for their efforts. *See*, *e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (reversing jury trial verdict in securities class action on loss causation grounds).

### 5. The Contingent Nature of the Fee and Risk of Nonpayment

From inception, Lead Counsel "undertook this case on a contingent basis and ran a substantial risk of no recovery whatsoever." *In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *4 (E.D. Va. Aug. 10, 2021); *In re Celebrex Antitrust Litig.*, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018) (recognizing counsel "undertook numerous and significant risks of nonpayment in connection with the prosecution of this action."); *GTT*, 2021 WL 1659848, at *6 (awarding requested fee where "Lead Counsel initiated and pursued the Action on a contingent basis, having received no compensation during the Action"). The risk of non-payment was amplified here because, as courts in this Circuit recognize, "prosecuting a securities fraud action is not only complex, but is also fraught with risk." *Phillips*, 2016 WL 2636289, at *8.

Lead Counsel had to contend with the heavy burden of the PSLRA's heightened pleading standard and Defendants' defenses to liability and damages, in order to secure a meaningful recovery for the Settlement Class. Lead Counsel also took on a risky, complex, and lengthy

13

litigation requiring the expenditure of extensive resources against formidable opposition with no guarantee of success.

To date, Plaintiffs' Counsel has received no compensation for their prosecution of this case. Since the extensive commitment of time and resources devoted here necessarily entailed the preclusion of other projects, the primary focus of the risk-of-nonpayment factor is to acknowledge this incongruence by permitting a commensurate recovery to compensate for the risk of recovering nothing. *See Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at \*16 (D.S.C. June 21, 2019) ("Contingency fee arrangements . . . are usually one-third or higher" because "payment [is] entirely depend[e]nt upon achieving a good result for Plaintiff[s] and the Class, and Counsel face[] significant risk of nonpayment"). Accordingly, the risk of nonpayment in this case strongly supports the requested fee.

### 6. The Amount of Time Devoted to the Case by Lead Counsel

The time and labor expended by Lead Counsel in prosecuting this Action further supports the requested 25% fee. Lead Counsel "fiercely litigated this case on behalf of their clients." *Genworth*, 210 F. Supp. 3d at 845. As stated above and in the Uslaner Declaration, Lead Counsel's efforts involved conducting a thorough investigation of the alleged fraud; drafting the detailed Amended Complaint; briefing Defendants' motion to dismiss the Amended Complaint and their motion for reconsideration; obtaining and analyzing thousands of pages of documents produced by Defendants; engaging and consulting with Lead Plaintiffs' damages experts; and preparing detailed submissions in connection with the mediation. In total, prosecuting this Action through April 17, 2026 necessitated Lead Counsel to expend nearly 4,000 hours, equivalent to more than $2,826,000 in attorney and staff time.

Lead Counsel will also expend additional time and out-of-pocket expenses in connection with preparing for and attending the Settlement Hearing. Further, should the Court approve the

Settlement, Lead Counsel will continue to perform legal work on behalf of the Settlement Class. Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and related inquiries and working with the Claims Administrator to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.")

### 7. Awards in Similar Cases

As discussed in detail in Section II.C. above, the requested fee is well within the range of fees that courts in the Fourth Circuit and nationwide have awarded in comparable cases on a percentage basis, and is reasonable given the highly favorable recovery achieved for the Settlement Class. Accordingly, this factor strongly supports the requested fee award. *See Mills*, 265 F.R.D. at 263-64 ("percentage awards are often between 25% and 30% of the fund").

### 8. A Cross-Check of Lead Counsel's Lodestar Confirms the Fee Request Is Reasonable

In order to achieve the recovery provided under the Settlement, Lead Counsel spent a total of 3,959.00 hours of attorney and other professional-support time prosecuting the Action on behalf of the Settlement Class. ¶ 74. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $2,826,691.25. *See id.*

The requested fee percentage of 25%, therefore represents a multiplier of approximately 2.21 of the total lodestar. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other comparable litigation with significant contingency risks such as this one. *See Nieman,* 2015 WL 13609363, at *2 (awarding fee representing a 6.4 multiplier);

*In re Massey Energy Co. Sec. Litig.*, 2014 WL 12656719, at *1-2 (S.D.W. Va. June 4, 2014) (awarding fee representing a 2.9 multiplier); *see also McClaran v. Carolina Ale House Oper. Co., LLC*, 2015 WL 5037836, at *5 (D.S.C. Aug. 26, 2015) ("Courts have generally held that a lodestar multiplier falling between 2 and 4.5 demonstrate a reasonable attorney's fees."); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar."); *Mills*, 265 F.R.D. at 265 ("lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee" in class actions litigated on a contingency fee basis).

Thus, a "cross-check" of the requested fee award against counsel's total lodestar supports the reasonableness of the fee application under the percentage-of-the-fund method. *See Jones*, 601 F. Supp. 2d at 765-76 (awarding fee resulting in a lodestar multiplier between 3.4 and 4.3 and noting that when "using the lodestar method as a cross-check" the Court needs not apply the "'exhaustive scrutiny'" normally required by that method" and "may use Class Counsels' estimate of the hours they have spent working on th[e] case.").

*     *     *

In sum, it is respectfully submitted that the 25% fee request is fair and reasonable.

## III. LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES

Lead Counsel also seeks payment of $335,258.43 in Litigation Expenses that it reasonably incurred in connection with the prosecution and resolution of the Action, which expenses are awarded in similar actions. *See e.g.*, *Genworth*, 210 F. Supp. 3d at 846 (reimbursing lead counsel $3.8 million in costs in securities class action); *Knurr v. Orbital ATK, Inc.*, 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (approving over $1.1 million in expenses in securities class action). Here, Lead Counsel's expenses include expert fees, mediation costs, and legal and factual research costs, all of which are customarily incurred in cases of this nature and were necessary to the

16

successful prosecution of the case and directly contributed to the Settlement. *See e.g.*, *Klein v. Altria Grp. Inc.*, No. 3:20-cv-00075-DJN (E.D. Va. 2019.), ECF No. 310 at 22 and ECF No. 320 at 10 (granting expense reimbursement of over $1.5 million for expert costs, electronic discovery costs, travel, photocopying, overnight mail, deposition services, transcripts, and electronic research); *Evolent Health*, ECF No. 251 at 28 and ECF No. 257 at 2 (granting expense reimbursement of over $900,000 for expert fees, mediation expenses, discovery-related costs, and investigation expenses.). The BLB&G Fee and Expense Declaration, attached as Exhibit 5 to the Uslaner Declaration, contains a breakdown of the Litigation Expenses. *See* Ex. B to Ex. 5. Notably, the requested expenses, together with Lead Plaintiffs' requested PSLRA awards, are less than the $500,000 amount set forth in the Notice, and, to date, no objections have been lodged thereto. ¶¶ 57, 94.

## IV.   LEAD PLAINTIFFS' REQUEST FOR REIMBURSEMENT UNDER THE PSLRA

Lastly, in connection with Lead Counsel's application for an award of Litigation Expenses, Lead Plaintiffs Genesee and Oakland County seek an award of a combined $5,105.21 in costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, each of the Lead Plaintiffs seeks an award based on the total amount of time dedicated by their employees in furthering and supervising the Action. *See* Ex. 2, ¶¶ 12-15; Ex. 3, ¶¶ ¶¶ 12-15. Specifically, Genesee seeks an award of $2,100.30 and Oakland County seeks an award of $3,004.91.

Each of the Lead Plaintiffs took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the proposed class since they became involved in the case. During the course of the litigation, Lead Plaintiffs, *inter alia*: regularly participated in discussions

with Plaintiffs' Counsel concerning significant developments in the litigation, including case strategy; reviewed drafts and final versions of significant pleadings and briefs filed in the Action and submitted as part of the mediation, and discussed Court orders; conducted and supervised the production of discovery by Lead Plaintiffs, including document productions and responses to written document requests and interrogatories; consulted with Lead Counsel regarding settlement negotiations; and evaluated and approved the proposed Settlement. *See* Ex. 2, ¶ 5; Ex. 3, ¶ 5. These efforts required representatives of Lead Plaintiffs to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.

Courts have reimbursed lead plaintiffs for similar time and effort. *See, e.g.*, *Nieman*, 2015 WL 13609363, at *2 (reimbursing lead plaintiff $20,612.50); *In re Computer Scis. Corp. Sec. Litig.*, 2013 WL 12155436, at *2 (E.D. Va. Sept. 20, 2013) (reimbursing lead plaintiffs $60,905.00); *Mills*, 265 F.R.D. at 265-66 (reimbursing lead plaintiffs $42,419.50); *Genworth*, 210 F. Supp. 3d at 846 (reimbursing lead plaintiffs $23,128.73); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *17 (E.D.N.Y. Jan. 26, 2024) (awarding $20,000 to lead plaintiff); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding $15,000 to lead plaintiff); *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *13 (D. Conn. Aug. 4, 2023) (awarding $48,700 to two lead plaintiffs); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019) (awarding $12,500 for each of the five representative plaintiffs).

## V.     CONCLUSION

For the reasons detailed herein, Lead Counsel respectfully request that the Court enter an Order: (i) awarding Plaintiffs' Counsel attorneys' fees in the amount of 25% of the Settlement Fund; (ii) awarding Lead Counsel Litigation Expenses in the amount of $335,258.43; and (iii) awarding $2,100.30 to Genesee and $3,004.91 to Oakland County, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class as authorized by the

PSLRA. A proposed order will be submitted with the reply papers after the deadline for objections has passed.

DATED: April 27, 2026

Respectfully submitted,

**TERPENING LAW PLLC**

*/s/ William R. Terpening*
William R. Terpening
221 West 11th Street
Charlotte, North Carolina 28202
Telephone: (980) 265-1700
Facsimile: (980) 265-1729
terpening@terpeninglaw.com

*Liaison Counsel for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner
2121 Avenue of the Stars
Suite 2575
Los Angeles, California 90067
Telephone: (310) 819-3481
JonathanU@blbglaw.com

-and-

Hannah Ross
Alec T. Coquin
Prachi Patel
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
alec.coquin@blbglaw.com
prachi.patel@blbglaw.com

*Counsel for Lead Plaintiffs and Lead Counsel
for the Settlement Class*

19

**VMT LAW, P.C.**
Thomas C. Michaud
Francis E. Judd
Aaron L. Castle
79 Alfred Street
Detroit, Michigan
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
tmichaud@vmtlaw.com
fjudd@vmtlaw.com
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*

20

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024 Standing Order *In re: Use of Artificial Intelligence*, No. 3:24-mc-00104 (W.D.N.C. 2024), the undersigned counsel hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: April 27, 2026

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all parties receiving electronic service in this Action.

Dated: April 27, 2026

*/s/ William R. Terpening*
William R. Terpening